JED CONSTRUCTION COMPANY, INC.,
A CORPORATION, APPELLANT, V.
GENE LILLY, DOING BUSINESS AS
GENE LILLY SURETY BONDS AND
INSURANCE, APPELLEE.

305 N.W.2d 1

Filed April 24, 1981.  No. 43218.

Kenneth Cobb of Law Offices of Kenneth Cobb, P.C., for appellant.

Knudsen, Berkheimer, Beam, Richardson & Endacott for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an action brought in the District Court for Lancaster County, by JED Construction Company, Inc., against Gene Lilly, its alleged agent, doing business as Gene Lilly Surety Bonds and Insurance, an insurance broker, to recover damages alleged to have been suffered because Lilly violated his instructions and exceeded his authority while acting as such agent in not causing an application for an indemnity agreement and a contractor's bond and indemnity agreement executed by JED in blank to be completed in accordance with the terms of the actual agreement. The beneficiary of the indemnity agreement was Universal Surety Company which, in reliance on the indemnity, issued a performance bond to Erik Hansen Construction Co. in connection with the construction of an addition to Norris Junior-Senior High School. In the case of *Universal Surety Co. v. Jed Constr. Co., Inc.*, 200 Neb. 712, 265 N.W.2d 219 (1978), this court affirmed a judgment which Universal Surety obtained against JED on the indemnity agreement in the amount of $61,872.68 and denied an offset of $18,516.12 claimed by JED on its counterclaim. A more detailed statement of the facts surrounding the transaction is set forth in the above case and we will not repeat those facts except as necessary for an understanding of the issue here presented.

JED, in this action, seeks to recover from Lilly the amount it was required to pay in the case of *Universal Surety Co. v. Jed Constr. Co., Inc., supra*, as well as other expenses in connection with that litigation.

The issues in this case were submitted to the jury, which rendered a judgment for Lilly. JED then appealed to this court, assigning various errors pertaining to instructions given to the jury or refused by the court and an error in connection with the reception of evidence.

In his answer Lilly pleaded, among other defenses: "[T]hat if the Amended Petition states any cause of action, such action is barred and estopped by principles of collateral estoppel and res judicata for the reason that all issues raised by the Amended Petition have been concluded by the judgment of the District Court of Lancaster County, Nebraska in *Universal Surety Co. v. JED Construction Co.*, Docket 296, Page 244, which judgment was duly given."

At trial Lilly introduced and there was received in evidence the transcript and bill of exceptions in *Universal Surety Co. v. Jed Constr. Co., Inc., supra.* Lilly, after both parties had rested, asked the trial court for a directed verdict for the defendant on the ground of collateral estoppel or, as it is more usually referred to, issue preclusion. The trial court reserved ruling on that motion and, after the jury verdict, held that the issue was moot and did not rule thereon.

Lilly, on this appeal, responds to the claims of error but also urges that even if there was error it was immaterial because, in any event, its motion for a directed verdict, based upon issue preclusion, should have been granted. We sustain this contention, hence it becomes unnecessary for us to examine JED's assignments of error.

In the prior case, among the issues decided were: (1) What was the actual agreement, and (2) The nature and extent of Lilly's authority and instruction. The first issue depended upon the facts in the second. In the previous action JED maintained that Lilly was the agent of Universal Surety. In this action it claims that Lilly was its agent. However, be that as it may, the issue of Lilly's authority and whether he acted in accordance with instructions from JED was an

issue in both cases and was decided against JED in the previous action. JED had an opportunity to and did fully litigate those issues in the prior action. We quote from JED's brief in the previous case. "Applying the principle that the form contract must be completed in accordance with the authority granted, it is clear that the Form 2 is subject to reformation on the basis that Universal *failed to conform it to the oral agreement reached between JED and Eugene Lilly,* Universal's agent. The Form 2 could easily have been so conformed via deletions and insertion of superseding language in blank spaces, including that reserved for Paragraph 17. JED does not dispute that an agreement existed whereby it was to indemnify Universal, but the Form 2 does not constitute that agreement and should be reformed." (Emphasis supplied.)

Lilly testified as a witness in the previous action, as did the officers of JED. Both Lilly and the officers testified in the case before us. Their testimony relates Lilly's authority and instructions given him by JED. The issue now before us was before us on the earlier appeal. In our opinion in *Universal Surety Co. v. Jed Constr. Co., Inc., supra,* we said at 714-15, 265 N.W.2d at 221: "Jed advances two theories, mutual mistake of fact and failure to complete the agreement according to its terms. Mistake as a ground for reformation of a contract must be a mutual mistake. [Citations omitted.]

"It is conceded that the officers of Jed did not read the contract and that they did not even talk with an agent or officers of Universal. The evidence does not show that the claimed mistakes were ever discussed with Lilly prior to the signing in blank by Jed's officers. The officers of Jed testified that the agreement they signed contained provisions different from the actual agreement. There is no evidence that Universal thought the terms of the contract were other than those contained in the actual agreement. Even if the officers of Jed were mistaken, it was a unilateral

mistake rather than a mutual one. Furthermore, one who does not read a contract before signing it cannot relieve himself of its burdens. [Citations omitted.]

"The second theory fails for the reasons discussed above. No evidence was offered tending to prove that the agreement was to be completed to include the provisions relating to exhaustion of the assets of the Hansens, retainage, or consent to extras. Again, the evidence could only establish that the Jed officers may have intended or thought that the agreement contained those provisions."

In *Peterson v. The Nebraska Nat. Gas Co.*, 204 Neb. 136, 281 N.W.2d 525 (1979), we held: "Collateral estoppel may be applied if the identical issue was decided in a prior action, there was a judgment on the merits which was final, the party against whom the rule is to be applied was a party or in privity with a party to the prior action, and there was an opportunity to fully and fairly litigate the issue in the prior action.

"Mutuality of estoppel is no longer considered to be a requirement for the application of collateral estoppel." (Syllabi of the court.) In that case The Nebraska Natural Gas Company was a defendant in a prior action where the issues of its negligence and legal responsibility for a gas explosion were litigated and a verdict was rendered against it. In *Peterson v. The Nebraska Nat. Gas Co.*, *supra*, the negligence issue was the same as that in the prior case but a different injured party was plaintiff.

The Supreme Court of Iowa has given a clear exposition of the principles of issue preclusion in the case of *Schneberger v. United States Fidelity & Guar. Co.*, 213 N.W.2d 913 (Iowa 1973). The court there held at 917: "To bar further litigation on a specific issue four requirements must be established:

"(1) The issue concluded must be identical.

"(2) The issue must have been raised and litigated in the prior action.

"(3) The issue must have been material and relevant to the disposition of the prior action, and

"(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. [Citations omitted.]

"Identity of parties is not necessary to give validity to a claim of issue preclusion. A stranger to a primary suit can assert the theory of issue preclusion as a defense in a subsequent suit provided other elements of the theory of issue preclusion coincide."

Professor Allan D. Vestal, in his text Res Judicata/Preclusion (1969), analyzes the various situations in which issue preclusion might arise. At V-317 he says: "In these situations where the losing defendants take the offensive and initiate subsequent lawsuits, it is very helpful to apply the test of reasonable expectations. Here it would again appear obvious that the person who once loses after having had his day in court would not be reasonable in expecting to be able to recover later when he sues someone not a party to the first suit. It is completely reasonable to hold that the nonparticipating nonparty to the first suit is able to assert preclusion against a plaintiff in the second suit if the plaintiff in Suit II was a losing party in the first suit, regardless of the position he occupied in Suit I.

"In these situations in which a defendant in Suit I has had an opportunity to present his side of a controversy fully and completely and has lost, it seems completely unreasonable to say that he can then start an action as a plaintiff and relitigate the matters which have been decided against him. Such a party should be bound by the decision which has been handed down."

For the reasons set forth we affirm the judgment for the defendant.

AFFIRMED.