FLOBERT INDUSTRIES, INC., A CORPORATION, APPELLANT,
v. JOHN H. STUHR, JR., ET AL., APPELLEES.
343 N.W.2d 917

Filed February 3, 1984. No. 82-780.

Warren L. Reimer of Ptak, Ptak & Reimer, for appellant.

Stanley J. Oliverius and Bernard L. McNary of Oliverius & McNary, for appellees.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Plaintiff commenced this action in the Boone County District Court to enjoin the defendants from trespassing and encroaching upon certain property and to recover damages from trespasses which occurred since September 24, 1978. The defendants answered by denying the allegations and setting up as a defense to the second cause of action that the defendants were the owners in fee of the land, a railroad right-of-way. The trial court found in favor of the defendants, denied the injunction, and dismissed the plaintiff's petition. We affirm.

The northwest quarter of Section 18, Township 22 North, Range 6 West, of the 6th P.M., Boone County, Nebraska, was acquired by Benton Cotterman from the United States by patent in 1884. On September 13, 1886, Benton Cotterman and his wife, Lena, conveyed by warranty deed to Fremont, Elkhorn and Missouri Valley Railroad Company, predecessor in title to Chicago and Northwestern Railway Company (C. & N.W. Ry. Co.), the railroad right-of-way consisting of a 100-foot strip of land across the middle of the quarter section. That deed contained the provision that "if at any time after said Railroad shall have been constructed, the said party of the second part, its successors and assigns, shall abandon said road, or the route thereof shall be changed so as not to be continued over said premises, the land hereby conveyed and all rights in and to the same, shall revert to the said party of the first, their heirs and assigns."

In 1903 the Fremont, Elkhorn and Missouri Valley

Railroad Company conveyed the right-of-way to the C. & N.W. Ry. Co. C. & N.W. Ry. Co. used the right-of-way until 1970, when it sought approval from the Interstate Commerce Commission to abandon the line. The final order of the Commission was confirmed on July 26, 1971, effective August 23, 1971. Meanwhile, C. & N.W. Ry. Co. conveyed its interest in the right-of-way by quitclaim deed to Flobert Industries, Inc. (plaintiff), dated February 6, 1969, recorded April 10, 1972.

Between the years 1972 and 1973 the plaintiff removed the rails and ties located on the right-of-way. From 1972 to 1976 the plaintiff paid real estate taxes on the land, removed a fence across the north boundary, and occasionally inspected the land until 1978.

In September 1893 Benton Cotterman conveyed the portion of the quarter section lying west of the right-of-way to his wife, Lena. In November 1892 Benton Cotterman conveyed the east portion of the quarter section to Charles Preusser. Subsequently, in February 1902 the Cottermans conveyed the west portion of the quarter section to Charles Preusser also. In these transactions the deeds conveyed only the land on either side of the right-of-way. In other words, the land under the right-of-way was not deeded to Charles Preusser.

The northwest quarter section was by subsequent conveyances deeded to John W. Stuhr and Jane C. Stuhr. The Stuhrs obtained title to the real estate by warranty deed dated February 2, 1953, recorded February 6, 1953. Each of the deeds in the chain of title excepted the railroad right-of-way out of the balance of the quarter section.

The Stuhrs conveyed their interest in the quarter section to their sons John H. Stuhr, Jr., and Mark F. Stuhr (defendants) by warranty deed dated December 13, 1973, recorded May 4, 1976. That deed did not contain an exception to the right-of-way.

After the C. & N.W. Ry. Co. ceased to use the right-of-way in 1971, the Stuhrs fenced off the north

boundary line, pastured cattle, and cut noxious weeds on the property. In 1978 the Stuhrs had the right-of-way leveled and have been farming the property since that time. Defendants have paid the property taxes for the years 1977 until the present.

In October 1978 the plaintiff brought suit in the county court of Antelope County against the defendants to recover certain salvaged railroad materials. In April 1980 the Antelope County Court found generally for the plaintiff on its petition and dismissed the defendants' cross-petition for damages when it found the plaintiff to be in actual possession of the real estate, that plaintiff was exercising control over the right-of-way and had not abandoned it, and that plaintiff was entitled to bring the action to recover the salvaged railroad materials. The county court awarded the plaintiff possession of certain steel culverts and granted no other damages or relief. The plaintiff and defendant in that action are the same parties to the present action.

After the amended petition for this trespass action was filed June 5, 1980, the defendants located and obtained quitclaim deeds to the railroad right-of-way from the heirs of Benton and Lena Cotterman.

The plaintiff assigns as error the Boone County District Court's finding that the plaintiff was not in actual possession of the subject property and not entitled to maintain an action in trespass. The basis upon which the plaintiff contends error existed is that (1) the issue of actual possession of real estate was previously adjudicated by the Antelope County Court and could not be relitigated in the Boone County District Court and that (2) title acquired after trespass is no defense in an action for trespass.

The basis of the plaintiff's claim is that though it is not the legal owner, it is the one in possession. Furthermore, the plaintiff contends that for the purpose of determining possession, the Antelope County Court decision precludes any relitigation of this issue. We note that the trial court here, the Boone

County District Court, found that the plaintiff had no greater right to possession of the real estate than the defendants.

It is the rule that to bar further litigation on a specific issue, the issue concluded must be identical, must have been or could have been raised and litigated in the prior action, must have been material and relevant to the disposition of the prior action, and the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment. *JED Constr. Co., Inc. v. Lilly*, 208 Neb. 607, 305 N.W.2d 1 (1981). While it is true that the parties are the same, that some of the material facts judicially determined in the former action are identical, and that the issue of who had possession of real estate was raised in both actions, the determination of possession of the real estate in the former action was given only as a general finding to defeat the defendants' claim to personal property by adverse possession of the real estate and the appurtenances attached to it.

This court, having carefully reviewed the evidence and exhibits from the action in Antelope County, finds that the plaintiff's contention that res judicata, or more aptly defined as "issue preclusion," applies to this case is without merit. Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: "(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them." Restatement (Second) of Judgments § 28 at 273 (1982).

Comment *d.* of the Restatement, *supra* at 279 reads as follows: "*Courts of the same state (Subsection (3))*. Not infrequently, issue preclusion will be asserted in an action over which the court render-

ing the proper judgment would not have had subject matter jurisdiction. In many such cases, there is no reason why preclusion should not apply; the procedures followed in the two courts are comparable in quality and extensiveness, and the first court was fully competent to render a determination of the issue on which preclusion is sought. In other cases, however, there may be compelling reasons why preclusion should not apply. For example, the procedures available in the first court may have been tailored to the prompt, inexpensive determination of small claims and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim . . . [o]r the legislative allocation of jurisdiction among the courts of the state may have been designed to insure that when an action is brought to determine a particular issue directly, it may only be maintained in a court having special competence to deal with it. In such instances, after a court has incidently [sic] determined an issue that it lacks jurisdiction to determine directly, the determination should not be binding when a second action is brought in a court having such jurisdiction. The question in each case should be resolved in the light of the nature of litigation in the courts involved and the legislative purposes in allocating jurisdiction among the courts of the state."

It is our opinion that the Antelope County Court incidentally determined the issue of possession of real estate only to dispose of the defendants' claim to the personal property by adverse possession, and it would be wholly inappropriate to not relitigate this issue in the trespass action. When considering Neb. Rev. Stat. § 25-401 (Reissue 1979), local actions involving real estate, which states in part, "All actions to recover damages for any trespass upon or any injury to real estate shall be brought only in the county where such real estate or some part thereof is situated," it seems even more appropriate to re-

litigate the issue of possession in the Boone County District Court. Although § 25-401 is actually a venue statute and not a subject matter jurisdiction statute, we believe the exception to issue preclusion still applies.

Having denied the issue of possession to be precluded, this court, having carefully reviewed the evidence and exhibits, agrees with the trial court and finds that the plaintiff did not have possession of the property, nor did the plaintiff have control over the property; that any right to the real estate was derived from the right of the C. & N.W. Ry. Co.; and that although the plaintiff had a right to remove the personal property, it had no greater right to possession of the real estate than the defendants.

Finding that the plaintiff did not have possession of the real estate or any right to possession of the real estate, it is prevented from bringing this action in trespass unless it has a claim to title. In order to recover for trespass the plaintiff need only have title or possession of the land when the acts complained of were committed. *Franz v. Nelson*, 183 Neb. 137, 158 N.W.2d 606 (1968).

Here, we point out that the trial court correctly noted the east property line of the western tract of land conveyed to Mrs. Cotterman was in fact the west boundary of the railroad right-of-way; that the west boundary line of the eastern tract of land conveyed to Mr. Preusser was in fact the east boundary line of the right-of-way; and that because of these deeds, the true owner of the fee title at the time of abandonment was Benton Cotterman, his heirs, or assigns. The evidence is uncontroverted that the defendants have obtained quitclaim deeds to the railroad right-of-way from Benton and Lena Cotterman's heirs and are the owners in fee.

Having neither possession nor title, the petition is dismissed, and it is not necessary to consider the claim that title acquired after trespass is not a defense in an action for trespass.

The judgment of the district court was correct and is affirmed.

AFFIRMED.