THOMAS LAKES OWNERS ASSOCIATION, APPELLANT AND CROSS-APPELLEE, V. MARY ANN GETCHELL RILEY ET AL., APPELLEES AND CROSS-APPELLANTS.

612 N.W. 2d 529

Filed June 20, 2000. Nos. A-99-401 through A-99-411, A-99-413 through A-99-415.

Loren L. Lindahl and Becky J.W. Dias, of Edstrom, Bromm, Lindahl, Sohl & Skokan, for appellant.

Jeanelle R. Robson and Trev E. Peterson, of Knudsen, Berkheimer, Richardson & Endacott, for appellees.

Irwin, Chief Judge, and Sievers and Moore, Judges.

Moore, Judge.

## INTRODUCTION

This appeal arises from a series of collection actions brought in Saunders County Court. The Thomas Lakes Owners Association (Association) sued the owners (Owners) of various cabins and lots at the Thomas Lakes subdivision for unpaid assessments for dredging the lake and road repairs after a flood, and in some cases, unpaid annual maintenance assessments and

dues. The Association also sought prejudgment interest and attorney fees.

The Owners, who are all Association members, answered and counterclaimed, alleging (1) that the Association's bylaws had not been validly adopted, (2) that the Association's right to make assessments was limited by easements granted to the Owners by the Association's predecessors in title and by their course of dealing, and (3) that the interest charged was in violation of the usury statutes. The county court found that the Owners were collaterally estopped from litigating the adoption of the bylaws; that the Association was entitled, as a matter of law, to recover the assessments as per the formula found in the bylaws; and that the Association was entitled to recover prejudgment interest. The Owners appealed to the district court for Saunders County which reversed, and remanded for further proceedings after finding that the county court's ruling on collateral estoppel was in error.

## BACKGROUND

The Thomas Lakes subdivision, located in Saunders County, comprises approximately 125 lots, some owned by individuals and some leased by cabin owners. The subdivision includes lakes, roads, and other "common areas" accessible to lot owners and tenants. These common areas were owned by the late Melvin Thomas (Thomas), who retained approximately 75 lots for rent to third parties, selling the balance to various purchasers. Thomas and the lessees of a particular lot entered into lease agreements, which stated that the lessee would abide by the rules, regulations, and bylaws of the Thomas Lakes Association, a predecessor of the Association.

Thomas offered to sell lots to the various cabin owners in 1981, and he filed restrictive covenants against the lots at Thomas Lakes subdivision on February 8, 1982, prior to sale. The restrictive covenants, among other things, required each lot owner to become a member of the Thomas Lakes Cabin Owners Association (cabin owners association), another predecessor of the Association, and gave the cabin owners association authority to assess lot and cabin owners for their respective shares for street and common area maintenance and similar services. The

covenants provided for the cabin owners association to promulgate other consistent rules and regulations.

Ownership interest in the common areas at the Thomas Lakes subdivision arose through easements granted in 1983, 1984, and 1985 by Thomas, directly to the individual owner in some cases (Owned Lots Easements), and in others to the current owner's predecessor in title (Farmers Bank Easement). The obligation to maintain the road and lake area described in the easements was assumed by the cabin owners association. The easements also stated that the nature and extent of any repairs or replacements of the road and lake rested in the sole discretion of the cabin owners association. The Farmers Bank Easement contains an allocation formula for assessments relating to natural disasters such as floods. Paragraph 5 of the Owned Lots Easements discusses maintenance fees, but contains no specific requirement that the grantee pay special assessments such as the road repair and dredging assessments. All easements require the payment of an annual maintenance fee to the cabin owners association.

Up until 1995, neither the cabin owners association nor the Thomas Lakes Association had governing bylaws. The cabin owners association was an unincorporated association of lot owners created by the terms of the restrictive covenants. The Thomas Lakes Association was an association of tenants created in the lot lease agreements. Following a trial in 1993 in the district court for Saunders County (Thomas case), the court enjoined the cabin owners association from a number of things, including assessing tenants and homeowners and performing any acts related to the Thomas Lakes subdivision. The district court retained jurisdiction to implement bylaws for the Thomas Lakes Association, which were enacted on May 13, 1995, by the present unincorporated Association. The district court terminated its jurisdiction on November 16, 1995. The bylaws, created under the district court's supervision, contain an allocation formula for assessments relating to natural disasters different from that found in the Farmers Bank Easement.

In the present case, the Association filed a motion to strike the Owners' counterclaim on the basis of collateral estoppel or issue preclusion, alleging that the counterclaim was barred by a ruling in a 1996 Saunders County Court case brought by Edward

Haffke, a tenant at Thomas Lakes subdivision, who raised the issue of the bylaws' validity (Haffke case). The 1996 county court determined that the Association's bylaws were valid.

In the present case, the county court ruled on the Association's motion to strike at a hearing on October 21, 1997, holding that issue preclusion could be used to prevent the Owners from relitigating the bylaws' validity. The county court based this ruling on its finding in the Haffke case that the bylaws were validly adopted. In its journal entry dated December 9, 1997, the county court treated the motion to strike as a motion for summary judgment, holding that the Owners were collaterally estopped from raising the validity of the bylaws' adoption in the current cases. The Association filed several more collection cases following this order, which were consolidated for trial.

Subsequently, the Association and the Owners both filed motions for partial summary judgment on the issue of whether the Association's right to make assessments for road repairs and dredging was limited by the easements granted to the Owners by the Association's predecessors in title. On August 17, 1998, the county court sustained the Association's motion and denied the Owner's motion for partial summary judgment, concluding that the assessment provisions contained in the bylaws superseded the easement provisions and governed the assessments at issue. Trial was held before the county court on August 17. At trial, the county court stated that its previous decision on collateral estoppel was applicable to all of the consolidated cases. The county court found in favor of the Association in its order of September 8, ruling that the assessments should be calculated according to the bylaws formula, rather than by the Association's prior course of dealing. The court reasoned that the bylaws were in effect on the date of the flood which precipitated the assessments, so the assessment formula in the bylaws should control. The county court also awarded prejudgment interest to the Association without specifying a date or specific interest rate in the ruling.

From these rulings, the Owners appealed to the Saunders County District Court. The district court reversed the county court's ruling on the collateral estoppel issue, finding that the validity of the bylaws could be relitigated. In its journal entry of

March 22, 1999, the district court reversed, and remanded for further proceedings. From the district court's decision, the Association appeals on the collateral estoppel issue. The Owners have filed a cross-appeal on the issues of whether the bylaws, the easements, or the Association's course of dealing control the assessment amount and whether prejudgment interest was properly awarded.

## ASSIGNMENTS OF ERROR

The Association asserts that the district court erred in reversing the county court's ruling on the applicability of issue preclusion as a means to prevent the Owners from litigating the validity of the Association's governing bylaws.

In the Owners' cross-appeal, they assert that the county court erred in (1) granting the Association's motion for partial summary judgment, finding that the bylaws, not the easements, governed the Owners' obligation to pay for improvements; (2) failing to hold that the Association's course of dealing established that the Owners were only responsible for one-half of the costs of road repair and the dredging assessments; and (3) awarding prejudgment interest to the Association.

## STANDARD OF REVIEW

Neb. Rev. Stat. § 25-2733(1) (Reissue 1995), regarding appellate review by the district court, provides in pertinent part that "the district court shall review the case for error appearing on the record made in the county court. The district court shall render a judgment which may affirm, affirm but modify, or reverse the judgment or final order of the county court." The district court may enter judgment in accordance with its "findings." § 25-2733(1).

A county court's factual findings in a bench trial of a law action have the effect of a verdict and will not be set aside unless such findings are clearly erroneous. *Holden v. Urban*, 224 Neb. 472, 398 N.W.2d 699 (1987). When a district court as an appellate court reviews a judgment in a bench trial of a law action in a county court, it does not reweigh evidence, but considers the judgment in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the success-

ful party, who is entitled to every reasonable inference deducible from the evidence. *Dammann v. Litty*, 234 Neb. 664, 452 N.W.2d 522 (1990). See, also, *General Fiberglass Supply v. Roemer*, 256 Neb. 810, 594 N.W.2d 283 (1999). The appellate court views the county court judgment in the same way if there is a further appeal. See *Dammann v. Litty, supra.* However, on questions of law, an appellate court is obligated to reach an independent determination from that of the lower court. *Spulak v. Tower Ins. Co.*, 257 Neb. 928, 601 N.W.2d 720 (1999).

When a district court reverses a county court's judgment and enters findings, a higher appellate court still reviews the county court's judgment for errors appearing on the record. See, *Nelson-Holst v. Iverson*, 239 Neb. 911, 479 N.W.2d 759 (1992) (Supreme Court could not find error by county court and thus district court's judgment in each case, which had reversed county court, was reversed by Supreme Court, with result that county court's judgment was reinstated); *Mason v. Schumacher*, 231 Neb. 929, 439 N.W.2d 61 (1989) (same).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998).

In an appellate review of a summary judgment, the court views the evidence in the light most favorable to the party against whom the summary judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Torrison v. Overman*, 250 Neb. 164, 549 N.W.2d 124 (1996).

## DISCUSSION

*Issue Preclusion.*

The Association seeks to use collateral estoppel or issue preclusion to bar the Owners from relitigating the validity of the Association's bylaws. These bylaws were created pursuant to court order and supervision in the Thomas case. Subsequently, in the Haffke case, Haffke sued the Association for the return of his assessment payment, alleging that the bylaws were not validly adopted. The county court determined that the Association's bylaws were valid. In the present case, the Owners

challenged the validity of the bylaws in their counterclaim and argue that their assessments should be calculated by the more favorable formula found in the easements or by the parties' prior course of dealing.

■ There are four conditions that must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Stewart v. Hechtman*, 254 Neb. 992, 581 N.W.2d 416 (1998); *Cunningham v. Prime Mover, Inc.*, 252 Neb. 899, 567 N.W.2d 178 (1997); *Torrison v. Overman, supra*; *Farm Credit Bank v. Stute*, 248 Neb. 573, 537 N.W.2d 496 (1995). The third element of collateral estoppel, the identity of parties or privity, is the focus of our analysis.

The Association claims that it is using issue preclusion defensively to shield itself from having to litigate the bylaws, enacted under a court's supervision and found to be valid by another court, on a case-by-case basis. The Association relies on language from *JED Constr. Co., Inc. v. Lilly*, 208 Neb. 607, 305 N.W.2d 1 (1981), for its assertion that identity of parties or privity is not required in this case.

In *JED Constr. Co., Inc.*, the court quoted an Iowa case, stating, " 'Identity of parties is not necessary to give validity to a claim of issue preclusion. A stranger to a primary suit can assert the theory of issue preclusion as a defense in a subsequent suit provided other elements of the theory of issue preclusion coincide.' " 208 Neb. at 612, 305 N.W.2d at 3 (quoting *Schneberger v. United States Fidelity & Guar. Co.*, 213 N.W.2d 913 (Iowa 1973)). The Association argues that since it is in the position of a defendant to the Owners' counterclaim, using collateral estoppel in this instance promotes judicial economy and shields it from the possibility of having to relitigate the bylaws in 122 separate cases, which is the approximate number of lots in the Thomas Lakes subdivision.

In asserting that identity of parties is not necessary, the Association takes the above language from *JED Constr. Co., Inc.* out of context. The court in *JED Constr. Co., Inc.* also

stated, " 'Collateral estoppel may be applied if . . . the party *against whom the rule is to be applied* was a party or in privity with a party to the prior action. . . .' " (Emphasis supplied.) 208 Neb. at 611, 305 N.W.2d at 3 (quoting *Peterson v. The Nebraska Nat. Gas Co.*, 204 Neb. 136, 281 N.W.2d 525 (1979)). By stating that identity of parties is not necessary, the court in *JED Constr. Co., Inc.* merely illustrates that although the party to be bound by issue preclusion must have been a party or in privity with a party to the previous suit, the one asserting issue preclusion need not have been a party to the first suit.

█ As to the Association's argument that it is using issue preclusion defensively in a manner that promotes judicial economy, the U.S. Supreme Court has noted: "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). The Supreme Court also stated in *Parklane Hosiery Co.* that "offensive use of collateral estoppel does not promote judicial economy in the same manner as defensive use does. Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.' " 439 U.S. at 329. Perhaps most revealing for the present case are the Court's following definitions of the offensive and defensive use of collateral estoppel:

> The . . . case involved defensive use of collateral estoppel—a plaintiff was estopped from asserting a claim that the plaintiff had previously litigated and lost against another defendant. The present case, by contrast, involves offensive use of collateral estoppel—a plaintiff is seeking to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff. *In both the offensive and defensive use situations, the party against whom estoppel is asserted has litigated and lost in an earlier action.*

(Emphasis supplied.) *Id.*

█ The Association's case does not fit a defensive use of collateral estoppel. Although the Association is in the position of having to defend against the Owners' counterclaim, the Owners

are not parties who have litigated and lost in an earlier action. Regardless of whether the Association is using collateral estoppel in an offensive or defensive manner, the Association's argument that identity of parties is not necessary in the present case ignores the criteria common to both offensive and defensive use, namely that the party against whom estoppel is asserted has litigated and lost in an earlier action.

This principle is in accordance with Nebraska law which indicates, "As to the status of the parties regarding collateral estoppel, the only requirement is that 'the party against whom the rule is applied was a party or in privity with a party to the prior action.' " *Cunningham v. Prime Mover, Inc.*, 252 Neb. 899, 903, 567 N.W.2d 178, 181 (1997) (quoting *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994)).

Due process requires that the rule of collateral estoppel operates only against persons who have had their day in court either as a party to a prior suit or in privity with a party to the prior litigation. *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990). The Owners were not parties in the Haffke case, and Haffke is not a party to these proceedings. Unless there is a showing of privity between Haffke and any of the Owners, the doctrine of collateral estoppel is not applicable.

Privity implies a relationship by succession or representation between the party to the second action and the party to the prior action in respect to the right adjudicated in the first action. *Gottsch v. Bank of Stapleton, supra.* In its broadest sense, "privity" is defined as mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right. *Id.* For the purpose of issue preclusion, the mere fact that litigants in different cases are interested in the same question or desire to prove or disprove the same fact or set of facts is not a basis for privity between the litigants. *Id.*

We find no showing of privity between Haffke and the Owners. There is no evidence that he was a predecessor in title to, related to, or a representative of any of the Owners. Haffke had an opportunity to litigate the adoption of the Association's bylaws and lost his case. Clearly, Haffke, or anyone claiming through him, such as a grantee, is barred from relitigating this

issue. However, the Owners in the present case have not yet had that opportunity. Although the Owners are interested in the same question as Haffke (namely, were the Association's bylaws validly adopted?), this alone cannot serve as a basis for privity between the Owners and Haffke. The Owners are not in privity with Haffke and should not be denied their "day in court."

Accordingly, we hold that the district court was correct in finding that collateral estoppel did not apply in this case to prevent the Owners from relitigating the validity of the Association's bylaws. We affirm the district court's decision to reverse the county court's ruling and remand for further proceedings.

*Method for Calculating Assessments.*

In the district court's judgment on appeal, it did not address the Owners' first two assignments of error in their cross-appeal, namely the county court's rulings with respect to the use of the assessment formulas found in the easements and from the parties' course of dealing. The district court stated:

> Because I agree with appellants, and because the validity of appellee's by-laws forms an essential predicate to all of the county court's later decisions from which these appeals lie, I now vacate the county court's judgments in all of these cases and reverse and remand for further proceedings in county court.

Because all of the county court's subsequent orders were affected by its initial decision that collateral estoppel precluded litigating the validity of the bylaws, we agree that the matter should be remanded for further proceedings to determine the appropriate method for calculating the assessments.

*Prejudgment Interest.*

In the county court's order of September 8, 1998, it awarded prejudgment interest at a rate and from a date not specified in the judgment, merely stating that prejudgment interest was to run "from date of demand until paid, as specified in the bylaws." The Association's bylaws specify:

> Dues, charges, or special assessments shall become delinquent if not paid within thirty (30) days after the date of their assessment and constitute, until paid, a continuing

charge against such lot or cabin owner. Delinquent dues shall accrue at one and one-half percent (1.5%) late charge per thirty (30) days as such dues, charges, or assessments remain unpaid.

The Owners contend that the interest rate provided for in the Association bylaws is a usurious rate and that the county court accordingly erred in awarding prejudgment interest. While the district court did not address the issue of prejudgment interest in its judgment on appeal, we will address the usury argument, as it is a legal issue. To the extent issues of law are presented, an appellate court has an obligation to reach independent conclusions irrespective of the determinations made by the court below. *Gress v. Gress*, 257 Neb. 112, 596 N.W.2d 8 (1999).

At trial, the Association admitted to charging 1.5 percent per month, a rate equaling 18 percent per year, on the uncollected assessment amounts. Neb. Rev. Stat. § 45-101.03(1) (Reissue 1998) provides: "Except as provided in section 45-101.04, any rate of interest which may be agreed upon, not exceeding sixteen percent per annum on the unpaid principal balance, shall be valid[.]" The penalty for charging a higher interest rate is loss of the interest. Neb. Rev. Stat. § 45-105 (Reissue 1998) provides in part:

> If a greater rate of interest than is allowed in section 45-101.03 shall be contracted for or received or reserved, the contract shall not on that account be void, but if in any action on such contract, proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall recover only the principal, without interest, and the defendant shall recover costs; and if interest shall have been paid thereon, judgment shall be for the principal, deducting interest paid.

In response to the foregoing, the Association refers us to Neb. Rev. Stat. § 45-104 (Reissue 1998), which provides in part that "[u]nless otherwise agreed, interest shall be allowed at the rate of twelve percent per annum." The Association argues in its brief that "if that portion of the bylaws is void as to the interest rate, then no agreement exists, and the court falls back to a twelve percent rate of interest by default." Brief for appellant on cross-appeal at 5. A usurious contract is not void, however, but,

rather, recovery is limited to the amount of principal without interest, less interest paid. *Baker v. A. C. Nelson Co.*, 185 Neb. 128, 174 N.W.2d 197 (1970).

We find that the evidence presented at trial shows, as a matter of law, that the bylaws provided for usurious interest. Accordingly, § 45-105 is the controlling provision. In *Central Constr. Co. v. Blanchard*, 180 Neb. 62, 141 N.W.2d 416 (1966), the court states that where the defense of usury is established, the plaintiff is not entitled to interest on the judgment awarded. The court goes on to state that § 45-105 is a special statute governing usurious contracts, taking precedence over the general statute providing for interest on judgments in cases where usury is established.

In the event that the court on remand finds that the bylaws were validly adopted and control the determination of the assessments due, the Association should only recover the principal, without interest, and the Owners should recover costs, pursuant to § 45-105. We do not intend by this ruling to express any opinion regarding the bylaws' validity.

## CONCLUSION

We affirm the district court's ruling reversing the summary judgment on the collateral estoppel issue and remanding the matter to the county court for trial on the validity of the bylaws and the proper method of calculating the assessments. We modify the district court's order to find as a matter of law that the interest provision in the bylaws, if found to be validly adopted, is usurious.

AFFIRMED AS MODIFIED.