IN RE INTEREST OF JADEN H., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,
V. DARREN H., APPELLANT, AND AMANDA T.,
APPELLEE AND CROSS-APPELLANT.
625 N.W. 2d 218

Filed April 17, 2001. No. A-00-831.

Christine P. Costantakos for appellant.

Laura M. Hilliard for appellee Amanda T.

James S. Jansen, Douglas County Attorney, and Karen Kassebaum Nelson for appellee State.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

Darren H. appeals and Amanda T. cross-appeals a juvenile court's decision to grant the State's motion for partial summary judgment in the juvenile court action seeking termination of their parental rights to their son Jaden H. In an earlier appeal, we upheld the termination of Darren's and Amanda's parental rights to Jaden's siblings, Destiny H. and Suede H. See *In re Interest of Destiny H. & Suede H.*, No. A-99-444, 2000 WL 1005218 (Neb. App. July 18, 2000) (not designated for permanent publication). This appeal involves the use of summary judgment and collateral estoppel in a juvenile case, because the State used the prior factual determination that Destiny and Suede lacked proper parental care as the basis for termination of Darren's and Amanda's parental rights to Jaden.

## PROCEDURAL BACKGROUND

Darren and Amanda have three children: Destiny, born May 26, 1993, Suede, born May 28, 1994, and Jaden, born November 21, 1998. Destiny and Suede were adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998), as children lacking proper parental care, by the separate juvenile court of Douglas County in two March 30, 1999, orders. In those orders, Darren's parental rights to Destiny and Suede were terminated under Neb. Rev. Stat. § 43-292(2) (Reissue 1998) (substantial, continuous, or repeated neglect), and Amanda's parental rights to Destiny and Suede were terminated under § 43-292(2) and (9) (torture and chronic abuse).

For convenience, we shall hereafter generally reference this first case as the "Destiny and Suede proceeding." On July 18,

2000, we affirmed the juvenile court's March 30, 1999, orders. See *In re Interest of Destiny H. & Suede H., supra*. Our opinion recited the evidence of abuse of Suede, including multiple fractures and bruises in various stages of healing, swollen and blue feet and hands likely caused by direct or repeated blows, and malnourishment which stunted his growth. He was forced to stand in a closet as punishment and wore inappropriate clothing for weather conditions. There was testimony in that case from a psychologist that Destiny and Suede suffered from posttraumatic stress disorder resulting from the abuse occurring within the family.

The State filed a petition to adjudicate Jaden and terminate Darren's and Amanda's parental rights to him under § 43-292(2). Under § 43-292(2), parental rights can be terminated when parents have substantially and continuously or repeatedly neglected and refused to give necessary parental care and protection to a sibling of the child at issue. The State alleged that Darren and Amanda substantially and continuously or repeatedly neglected and refused to give necessary care and protection to Suede, that this conduct put Jaden at risk of harm, and that it was in Jaden's best interests that Darren's and Amanda's parental rights be terminated. The factual allegations supporting termination were those facts concerning the abuse and neglect of Destiny and Suede which the juvenile court found to be true when it adjudicated Destiny and Suede and terminated Darren's and Amanda's parental rights to them.

On July 21, 2000, immediately after our affirmance in the Destiny and Suede proceeding, the State filed an amended motion for partial summary judgment in Jaden's case. The State's motion asserted that the allegations in the second amended petition regarding Jaden were substantially the same allegations made in the Destiny and Suede proceeding. Therefore, the State claimed that the factual findings in the Destiny and Suede proceeding were established facts in Jaden's case and res judicata. The juvenile court held a hearing on July 25 on the motion for partial summary judgment. During that hearing, the court found that Darren and Amanda were both present when the Destiny and Suede proceeding was held; that Darren and Amanda fully participated in that proceeding with

counsel at every stage; that they are the parents of Destiny, Suede, and Jaden; and that the issues had been decided by the court in the Destiny and Suede proceeding, making them res judicata in the action to terminate parental rights to Jaden. The "partial" attribute of the summary judgment comes from the fact that the juvenile court did not decide whether Jaden was a child at risk of harm or that terminating parental rights to Jaden was in his best interests, expressly leaving those matters open for further litigation.

Darren and Amanda filed timely motions for new trial which asserted, among other things, that the order in the Destiny and Suede proceeding was not a final order for res judicata purposes because a mandate from this court had not been issued. Our opinion affirming the lower court's decision in the Destiny and Suede proceeding was issued a week before the juvenile court entered partial summary judgment in Jaden's case.

Darren filed a petition for further review with the Supreme Court on August 4, 2000. On that same day, the juvenile court held a hearing on Darren's and Amanda's motions for new trial in Jaden's case, which were denied. On August 8, Darren then appealed and Amanda cross-appealed to this court the juvenile court's July 25 order sustaining the State's motion for partial summary judgment in Jaden's case and the court's August 7 order overruling their motions for new trial. See Neb. Ct. R. of Prac. 1C and 1E (rev. 2000).

Thus, by mid-August 2000, this court had affirmed the termination concerning Destiny and Suede, but Darren had sought further review of our decision from the Nebraska Supreme Court. In Jaden's case, there had been a grant of partial summary judgment using the Destiny and Suede proceeding, and Darren and Amanda had perfected their appeal and cross-appeal, respectively, of that decision to this court—the instant appeal.

## ASSIGNMENTS OF ERROR

Darren asserts, restated and reordered, that the trial court erred when it used res judicata as the basis for sustaining the State's partial summary judgment motion in Jaden's case because (1) the court used a preponderance of the evidence standard to decide the allegations of neglect and abuse of Destiny

and Suede, but then used those findings of fact to determine whether to terminate his parental rights to Jaden, which requires a different standard of proof—clear and convincing evidence; (2) the March 30, 1999, orders in the Destiny and Suede proceeding were not final orders because the Supreme Court had been asked to take further review of our affirmance; (3) the use of the orders from the Destiny and Suede proceeding denied Darren due process in Jaden's case by precluding him from confronting and cross-examining the State's witnesses and adducing his own evidence. While stated somewhat differently, Amanda's assignments of error in her cross-appeal are essentially the same as Darren's. Any differences of consequence will be detailed in our opinion.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Clifford M. et al.*, 258 Neb. 800, 606 N.W.2d 743 (2000).

The applicability of the doctrines of res judicata and collateral estoppel constitutes a question of law. *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994). With regard to questions of law, this court is obligated to reach a conclusion independent from the trial court's conclusion. *Id.*

The determination of whether the procedures afforded an individual comport with the constitutional requirements for procedural due process presents a question of law. *In re Interest of Joseph L.*, 8 Neb. App. 539, 598 N.W.2d 464 (1999).

## ANALYSIS

*Jurisdiction.*

In the absence of a final order from which an appeal may be taken, the appeal must be dismissed for lack of jurisdiction. *In re Adoption of Krystal P. & Kile P.*, 248 Neb. 907, 540 N.W.2d 312 (1995). There are three types of final orders which may be reviewed on appeal: (1) an order which affects a substantial right and determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made upon

summary application in an action after a judgment is rendered. *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993). All three types of final, appealable orders share the requirement that a substantial right be affected, which means an essential legal right, not a mere technical right. *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994). The order on appeal here, to be final, can only fit within the second category from *Jarrett*. A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing. *Jarrett, supra*.

The State's action seeks to terminate Darren's and Amanda's parental rights to Jaden, but their defenses to the State's petition for termination have been substantially lessened because of the preclusive use of collateral estoppel, the applicability of which will be explained in greater detail later in this opinion. They are, by virtue of the order under appeal, precluded from relitigating their treatment of Destiny and Suede, and it is that conduct which is the sole basis alleged for the termination of their parental rights to Jaden. This diminishes the defenses available to them in the instant action, and therefore the order under appeal affects a substantial right.

■ The second question is whether granting a motion for partial summary judgment is a special proceeding. This matter has been extensively discussed by the Nebraska Supreme Court, and the court has made it very clear that a partial summary judgment is not a special proceeding. See *O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998). The court in *O'Connor* also limited the applicability of several cases which might be read as making a partial summary judgment appealable. Against that authority is the clear dictate that a "proceeding before a juvenile court is a special proceeding for appellate purposes." *In re Interest of Sarah K.*, 258 Neb. 52, 56, 601 N.W.2d 780, 783 (1999). It seems that the apparent conflict is resolved by the notion that the specific holding controls over the general one. See *Alegent Health Bergan Mercy Med. Ctr. v. Haworth*, 260 Neb. 63, 615 N.W.2d 460 (2000). Therefore, we conclude, consistent with our power and duty to determine whether appellate jurisdiction exists, see *City of Lincoln v. Twin Platte NRD*, 250 Neb. 452, 551 N.W.2d 6 (1996),

that an order of partial summary judgment entered in an adjudication proceeding is made in a special proceeding and affects a substantial right. Thus, the order is a final, appealable order.

*Juvenile Court's Power to Grant Summary Judgment.*

Although not assigned as error in Darren's original brief, he argues in his reply brief that juvenile courts, as statutorily created courts of limited and special jurisdiction, lack authority to grant summary judgment because the Nebraska Juvenile Code does not confer this power upon them. Darren did not raise this issue before the juvenile court before or during the summary judgment hearing in Jaden's case, except in an oblique way. Darren's counsel said she had "an objection" to the court's granting partial summary judgment. However, as we read the record, that objection was made only on the grounds of the deprivation of the due process right to confront and examine witnesses.

Darren argues that we should apply the plain error doctrine to the question of whether the juvenile courts have authority to grant motions for summary judgment because it affects the integrity and fairness of juvenile proceedings. Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *In re Estate of Morse*, 248 Neb. 896, 540 N.W.2d 131 (1995). Our research reveals that there is no reported Nebraska case where summary judgment was used in a juvenile proceeding. This bolsters our view that the resolution of the issue being raised is so central to the integrity of juvenile court proceedings that we should address it, despite Darren's failure to unequivocally preserve the alleged error below and properly present it here in his original briefing.

In *Buckingham v. Creighton University*, 248 Neb. 821, 539 N.W.2d 646 (1995), the Supreme Court held that the Nebraska Workers' Compensation Court, a statutorily created court of limited and special jurisdiction, acted outside its powers when it granted a motion for partial summary judgment because the Workers' Compensation Court is not specifically authorized to

grant motions for summary judgment. (The Legislature has since granted such authority. See Neb. Rev. Stat. § 48-162.03(1) (Reissue 1998)).

Article V, § 27, of the Nebraska Constitution allows the Legislature to establish juvenile courts, which the Legislature has done in counties having a population of more than 75,000, and such courts are known as separate juvenile courts. See Neb. Rev. Stat. § 43-2,111 (Reissue 1998). If a county does not have a separate juvenile court, then the county court has jurisdiction over juvenile matters. See Neb. Rev. Stat. § 24-517(9) (Cum. Supp. 2000). But, in neither situation does the Nebraska Juvenile Code make any provision for summary judgment, partial or otherwise. Clearly, juvenile courts are courts of limited and special jurisdiction. See *In re Interest of Lisa V.*, 3 Neb. App. 559, 529 N.W.2d 805 (1995) (holding that juvenile court is not court of general jurisdiction). In *Buckingham, supra,* the court noted, "The absence of authorization for summary judgment motions found in the workers' compensation statutes contrasts with the express statutory authorization for the use of summary judgment motions in the district and county courts." 248 Neb. at 825, 539 N.W.2d at 649.

While a county court can grant summary judgment under Neb. Rev. Stat. § 25-2701 (Reissue 1995), we reject the notion that such power automatically transfers over to county court when it sits as a juvenile court, in those counties which do not have a separate juvenile court. To hold otherwise would create the illogical and absurd result that the separate juvenile court in Douglas County could not grant summary judgment but a county court exercising its juvenile jurisdiction in a less populous jurisdiction like Cherry County could grant summary judgment.

■ We hold that the reasoning of *Buckingham* applies here and compels the holding that absent statutory authorization from the Legislature, summary judgment is an unavailable procedure in the juvenile courts of this state. While a juvenile court is without authority to enter a partial summary judgment, we conclude that the use of partial summary judgment in the instant case was harmless procedural error.

This conclusion is driven in large measure by recognition of the fact that all the juvenile court in the instant case did was

receive evidence which was undisputedly admissible and which, from a legal standpoint, conclusively established that Darren and Amanda had failed to provide proper parental care to Destiny and Suede. As will be more apparent in our discussion of collateral estoppel, Darren and Amanda were not going to be able to avoid, sidestep, or change the fact that they had been judicially determined to have failed to provide proper parental care to Destiny and Suede—unless the Nebraska Supreme Court were to reverse this court's decision in the Destiny and Suede proceeding—which did not happen. Thus, whether our opinion in the Destiny and Suede proceeding is judicially noticed by the juvenile court, offered and received in a summary judgment proceeding, or at a full-blown trial in Jaden's case, the result is the same—conclusive proof from a legal standpoint of Darren's and Amanda's failure to properly parent Jaden's siblings. We also emphasize that our conclusion that the error in procedure was harmless also flows from the unique evidentiary circumstance that the evidence offered and received included this court's decision, now final, in the Destiny and Suede proceeding. Finding no reversible error in the method that the prior adjudication came before the trial court, we turn to the use of collateral estoppel.

### Collateral Estoppel.

Res judicata refers to claim preclusion, while collateral estoppel refers to issue preclusion, two different concepts, although the two terms are often used together or interchangeably. See *Hickman v. Southwest Dairy Suppliers, Inc.*, 194 Neb. 17, 230 N.W.2d 99 (1975). The doctrine of res judicata means that a final judgment on the merits is conclusive upon the parties in any later litigation involving the same cause of action. *Pipe & Piling Supplies v. Betterman & Katelman*, 8 Neb. App. 475, 596 N.W.2d 24 (1999). Collateral estoppel applies when an issue of ultimate fact has been determined by a final judgment with the result that the issue cannot be litigated again between the same parties in a future lawsuit. *Id.* Although the motion for partial summary judgment, the order, and the briefs refer to res judicata, this case actually involves collateral estoppel because this is a different cause of action—involving Jaden. But whether Destiny and Suede received proper parental care is an issue common to both cases.

One way of looking at the issue is to ask whether Darren and Amanda can in this proceeding involving Jaden again litigate whether they failed to provide proper parental care to Destiny and Suede, given the earlier judicial determination. The juvenile court held that the factual allegations of lack of proper parental care which it found to be true in the Destiny and Suede proceeding were established via res judicata in the instant proceeding so as to adjudicate Jaden and potentially terminate parental rights, depending on the outcome of the issues expressly reserved for further proceedings.

Four conditions must exist for collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Thomas Lakes Owners Assn. v. Riley*, 9 Neb. App. 359, 612 N.W.2d 529 (2000). Darren attacks the juvenile court's application of res judicata in only one aspect, finality of judgment, while Amanda's attack is based on the lack of identity of issues and lack of finality.

▮ Amanda argues that because different children were at issue in the Destiny and Suede proceeding, the juvenile court erred in applying collateral estoppel in Jaden's case. Clearly, § 43-292(2) contemplates that the lack of proper parental care of one child in a family can be grounds for termination of parental rights with respect to another child of the parents. Thus, the lack of proper parental care of Destiny and Suede could constitute grounds for termination of parental rights as to Jaden, because the three are siblings. Thus, the issue of proper parental care of Destiny and Suede is at issue in Jaden's case, as it was in the Destiny and Suede proceeding. Amanda's argument is without merit.

*Finality of Judgment and Mootness.*

Darren and Amanda argue that the March 30, 1999, orders adjudicating Destiny and Suede and terminating their parental rights to them were not final orders for collateral estoppel pur-

poses. After this court issued its July 18, 2000, opinion affirming the juvenile court's orders terminating Darren's and Amanda's parental rights to Destiny and Suede, the parents had until August 17 to file a petition for further review with the Supreme Court. Absent an affirmative showing that no party will seek further review in the Nebraska Supreme Court, our mandate is not issued until such time has passed. Consequently, Amanda argues that our judgment of July 18 was not final until the time to file a petition for further review had run. However, Amanda did not file a petition for further review.

Darren makes the same argument as Amanda, and he did file a petition for further review with the Supreme Court on August 4, 2000. Darren argues that because the standard of appellate review of juvenile orders is trial de novo on the record, requiring the appellate court to make findings of fact independently of the juvenile court, the March 30, 1999, adjudication-termination orders concerning Destiny and Suede were not final. Therefore, Darren concludes that they could not be used for collateral estoppel purposes in Jaden's proceeding as long as the petition for further review was pending.

The Supreme Court has held that a criminal conviction could not be used as collateral estoppel on liability in a subsequent civil suit because the judgment of conviction in the criminal proceeding was being appealed. *Shuck v. Jacob*, 250 Neb. 126, 548 N.W.2d 332 (1996) (conviction of murder could not be used in wrongful death action brought on behalf of murder victim as conviction was still on appeal). However, a juvenile court proceeding is civil in nature, *McMullen v. Geiger*, 184 Neb. 581, 169 N.W.2d 431 (1969), and in a civil action, an appeal does not affect the finality of the judgment for collateral estoppel purposes. See, *Peterson v. The Nebraska Nat. Gas Co.*, 204 Neb. 136, 281 N.W.2d 525 (1979); *Kometscher v. Wade*, 177 Neb. 299, 128 N.W.2d 781 (1964) (extensively discusses authority showing that civil judgment on appeal to appellate court is nonetheless final judgment).

■ Darren distinguishes *Peterson* and *Kometscher* as actions at law in which the standard of appellate review favors courts' leaving factual findings undisturbed, whereas, appellate review

of a juvenile case is de novo. We do not find that distinction persuasive because we remember that the hallmark of the Nebraska Juvenile Code is the best interests of the children. *In re Interest of Eric O. & Shane O.*, 9 Neb. App. 676, 617 N.W.2d 824 (2000). Prompt resolution of Jaden's case using the Destiny and Suede proceeding is in Jaden's best interests, particularly when it can be done without the cost, time, and trauma of relitigating what happened to Destiny and Suede, assuming that the parents' rights are protected. Thus, while our finding that there had not been proper parental care of Destiny and Suede potentially could have been further reviewed by the Nebraska Supreme Court, that fact does not prevent our decision from being final for purposes of collateral estoppel. While a decision from the Nebraska Court of Appeals affirming a juvenile court's termination of parental rights may be further reviewed by the Nebraska Supreme Court, under § 43-292(2), the Court of Appeals' decision is final for collateral estoppel purposes. If our affirmance of the termination order concerning Destiny and Suede had been changed by the Supreme Court, Darren and Amanda had obvious remedies within Jaden's case. (A Nebraska Supreme Court opinion reversing our affirmance would clearly be grounds for a new trial on the basis of "newly discovered evidence," see Neb. Rev. Stat. § 25-1142(7) (Cum. Supp. 2000), if not as a matter of law, then as the "law of the case.") For these reasons, we hold that the March 30, 1999, adjudication-termination orders concerning Destiny and Suede were final orders.

The State argues that even if the March 30, 1999, orders in the Destiny and Suede proceeding were not final orders, Darren's and Amanda's arguments were mooted by the Supreme Court's overruling of Darren's petition for further review of our decision, which occurred on September 13, 2000. When the petition for further review was overruled, this court's opinion of July 18 became "final" in every sense of that word. A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation. *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999). The Supreme Court's overruling of Darren's petition for further review on September 13 moots the argument that the juvenile court's decision, and our affirmance

thereof, in the Destiny and Suede proceeding was not final. It certainly became final, and no prejudicial error could result from the trial court's use of it. The lack-of-finality argument fails for both reasons outlined above.

*Different Burdens of Proof.*

Darren argues that when granting the State's motion for partial summary judgment in Jaden's case, the juvenile court erred by using the factual matters the juvenile court found to be true by a preponderance of the evidence in the adjudication portion of the Destiny and Suede proceeding. Darren alleges error was committed because adjudicating a child requires a finding that the allegations are true by only a preponderance of the evidence standard, while terminating parental rights requires a finding that the allegations are true by clear and convincing evidence, a higher burden of proof. The record shows that Darren makes this argument for the first time on appeal, failing to raise it during the July 25, 2000, hearing regarding the State's motion for partial summary judgment or during the August 4 hearing on his motion for new trial. However, we will review this assignment of error under the plain error doctrine. See *In re Estate of Morse*, 248 Neb. 896, 540 N.W.2d 131 (1995). If the juvenile court applied an incorrect burden of proof, then Darren was denied his constitutional right to his parent-child relationship with Jaden on the basis of plain error.

Darren correctly notes that changes in the burden of proof may defeat collateral estoppel. See *State v. Yelli*, 247 Neb. 785, 530 N.W.2d 250 (1995). *Yelli* gives the example that an acquittal in a criminal case does not bar prosecution of a subsequent civil action because the acquittal concludes no issues in the civil action. The reason is, of course, that the criminal case carries a higher or more strict burden of proof than the civil case. Because of the different standards of proof, a parent's conduct may be grounds for a juvenile court to acquire jurisdiction, even though the parent was acquitted of criminal charges of conduct detrimental to a child. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992).

While Neb. Rev. Stat. § 43-279.01 (Reissue 1998) uses the term "standard of proof," we think burden of proof and standard

of proof are interchangeable terms. The term "burden of proof" is used to describe two related but different concepts: the burden of production of evidence and the burden of persuading the fact finder, to the requisite degree of belief, that a particular proposition of fact is true. *Schneider v. Chavez-Munoz,* 9 Neb. App. 579, 616 N.W.2d 46 (2000), citing 29 Am. Jur. 2d *Evidence* § 155 (1994).

An order terminating parental rights must be based on clear and convincing evidence. *In re Interest of Sunshine A. et al.,* 258 Neb. 148, 602 N.W.2d 452 (1999) (finding clear and convincing evidence of abandonment under § 43-292(1) and clear and convincing evidence that termination was in children's best interests).

■ After our review of the second amended petition and the juvenile court's orders in the Destiny and Suede proceeding, we find that the factual allegations regarding the lack of proper parental care of Destiny and Suede were said in one place in the order regarding Darren to be true by a preponderance of the evidence, but the court also said that the factual allegations were established by clear and convincing evidence. The order terminating Amanda's parental rights referred only to the clear and convincing standard. Thus, the order in the Destiny and Suede proceeding regarding Darren is somewhat awkward because in different places within its order the juvenile court found that both standards of proof were satisfied. Nonetheless, Darren's parental rights to Destiny and Suede were terminated under § 43-292(2), and the juvenile court used the correct clear and convincing standard of proof in that case. Therefore, the same burden of proof was used to find that there were grounds to terminate Darren's parental rights to Jaden as were used to actually terminate his parental rights to Destiny and Suede. Section 43-292(2) obviously allows the State to use the factual findings from a sibling's case, when proved true by clear and convincing evidence, as a basis for termination of parental rights to a sibling.

*Due Process—Confronting and Cross-Examining Witnesses and Adducing Evidence.*

■ Darren and Amanda both allege that their due process rights to confront and cross-examine the State's witnesses and to

adduce evidence on their own behalf under § 43-279.01, were violated in Jaden's case by the juvenile court's collateral estoppel use of the factual findings from the Destiny and Suede proceeding. As far as confrontation and cross-examination is concerned, Darren and Amanda both had the opportunity to confront and cross-examine the State's witnesses during the 5-day trial in the Destiny and Suede proceeding in which Darren's and Amanda's lack of proper parental care of Destiny and Suede was the issue and was found to be clearly and convincingly proved. The essence of issue preclusion is that once parents have litigated their treatment of their child's sibling in an adjudication proceeding, they are not entitled to another opportunity to litigate the same issue in a subsequent proceeding involving the child under § 43-292(2). It naturally follows that Darren and Amanda do not get another opportunity to confront and cross-examine witnesses in Jaden's case on this same issue. If they did, then collateral estoppel would be totally meaningless.

The same rationale dispenses with the claim that Darren and Amanda were denied the opportunity in the instant case to adduce evidence. They had that opportunity in the Destiny and Suede proceeding. By definition, collateral estoppel means that the issue of whether Darren and Amanda provided proper parental care to Destiny and Suede has already been litigated and decided against Darren and Amanda. That adverse decision may be used against them in a later proceeding, where it is again at issue, without the need for retrying the issue. They are precluded from adducing evidence on this issue because they already had a full and fair opportunity to litigate this issue. Moreover, we note in passing that the record shows that neither Darren nor Amanda attempted to offer evidence in the summary judgment proceeding, making this part of their argument rather hollow, if not moot.

In conclusion, each of the four prerequisites for use of collateral estoppel are satisfied, and by definition, the use of the doctrine precludes a second opportunity to confront and cross-examine witnesses and adduce evidence—which, as we earlier said, is why the error in proceeding via partial summary judgment, rather than by a trial, is only a harmless procedural error.

*Darren's Wrongs Used Against Amanda.*

■ Amanda argues that her due process rights were violated when the juvenile court used collateral estoppel and entered partial summary judgment against her in Jaden's case based upon Darren's wrongs against Destiny and Suede, rather than upon her own conduct. Amanda misconstrues the record and the law. In the State's second amended motion for termination of parental rights in Jaden's case, filed May 15, 2000, upon which the matter proceeded, the State alleged that Destiny and Suede were adjudicated children because Amanda had substantially and continuously or repeatedly neglected them and refused to give Suede necessary care and protection. See § 43-292(2). The factual allegations were that Suede suffered numerous fractures and bruises while in Amanda's care; that Amanda failed to seek necessary care and attention for Suede; and that Amanda intentionally deprived Suede of proper food and nutrition, resulting in his malnourishment. In the August 11, 1998, motion for termination of parental rights, the State alleged that Amanda was aware, or should have been aware, of the physical abuse Darren inflicted on Suede, but she failed to protect Suede. In its March 30, 1999, order in the Destiny and Suede proceeding regarding Amanda's parental rights, the juvenile court found these things to be true. Thus, Darren's wrongs are used against Amanda, but his wrongful behavior becomes hers because she failed to care for and protect her children from Darren's abuse, and in any event there were ample findings of Amanda's failure, completely apart from Darren's misdeeds. Evidence of a parent's abuse or neglect of a child may be used against the other parent in a proceeding to terminate parental rights when that other parent fails to protect the child. We see no due process problem with the rule that society expects a parent to protect children from cruelties being inflicted upon them by the other parent, and Amanda directs us to no authority that our view is wrong. Without such a rule, children would be helpless victims of the adults who should care for them. This argument is without merit.

## CONCLUSION

In Jaden's case, the juvenile court was correct to give collateral estoppel effect to the findings in the earlier Destiny and

Suede proceeding that Darren and Amanda had failed to provide proper parental care to those children. While the juvenile court's procedure was flawed in that it was without authority to entertain and enter summary judgment, or even partial summary judgment, the real effect of its action was nothing more than to take judicial notice of the proceedings and result in a juvenile case involving Jaden's siblings. Included within the evidence was this court's opinion in which we detailed the abuse and neglect of Destiny and Suede and concluded, "The evidence regarding the malnourishment and child abuse of Suede clearly and convincingly establishes that Amanda and Darren substantially and continuously or repeatedly neglected and refused to give Suede or Destiny necessary parental care and protection as required by § 43-292(2)."

Not only was it proper for the juvenile court to use this finding, which is made by the proper standard of proof of clear and convincing evidence, it was bound by our conclusion, as were Darren and Amanda. In addition, the Legislature, by its addition of "sibling" to § 43-292(2) has said that such a finding as to one sibling can be the basis for the termination of parental rights to another sibling. Whether that finding was binding in Jaden's case depends on the four prerequisites for collateral estoppel, which we have detailed herein and found all to be present. The doctrine of collateral estoppel allows proof in this case that Jaden's siblings, Destiny and Suede, lacked proper parental care from Darren and Amanda by the simple expedient of introducing the judicial finding to that effect, including this court's opinion in the appeal of the Destiny and Suede proceeding. Thus, the procedural error in entering partial summary judgment was harmless because the evidence of the Destiny and Suede proceeding offered in the summary judgment proceeding was unquestionably admissible at a trial and it conclusively established the lack of proper parental care of Jaden's siblings by Darren and Amanda. Thus, in these unique circumstances, we find no reversible error in the juvenile court's granting the State's partial summary judgment motion in Jaden's case. Absent prejudice to a party's substantial rights, an appellate court may disregard procedural errors committed by the trial court. *Goeke v. National Farms, Inc.*, 245 Neb. 262, 512 N.W.2d 626 (1994).

The cause is remanded to the separate juvenile court of Douglas County to proceed with the trial on the issues which the court expressly reserved for trial, to-wit: the risk of harm to Jaden and whether it is in his best interests that Darren's and Amanda's parental rights to Jaden be terminated.

AFFIRMED AND REMANDED
WITH DIRECTIONS.