ROBERT E. DAY, JR., APPELLANT, V.
ROBIN E. HELLER, APPELLEE.
639 N.W.2d 158

Filed February 12, 2002.   No. A-00-928.

John W. Ballew, Jr., of Ballew Schneider & Covalt, for appellant.

Mark L. Laughlin and Robert F. Peterson, of Laughlin, Peterson & Lang, for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

Irwin, Chief Judge.

## I. INTRODUCTION

Robert E. Day, Jr., appeals from an order of the district court for Sarpy County granting summary judgment in favor of Robin E. Heller and dismissing Robert's petition. In Robert's action against Robin, he sought damages in tort for fraud, assumpsit, and emotional distress upon discovering that he is not the biological father of Adam, who was born during Robin and Robert's marriage. The district court granted summary judgment on the basis that Robin was entitled to a judgment on the merits and on a finding of paternity in Robert and Robin's earlier dissolution proceeding which acted as res judicata and barred Robert's current causes of action. Because we find that Robert's causes of action in tort are not barred by the doctrine of res judicata, we find that summary judgment was improper, and we reverse, and remand for further proceedings.

## II. BACKGROUND

A decree of dissolution was entered on May 31, 1991, dissolving Robin and Robert's marriage. The decree indicates that one child was born during the parties' marriage, Adam, born July 14, 1987. In the decree, Robin was granted custody of Adam, and Robert was ordered to pay child support in the initial amount of $270. Robert was also ordered to provide medical insurance coverage for Adam. According to Robert's petition in the present action, the trial court entered subsequent orders increasing Robert's child support obligation and requiring Robert to pay one-half of Robin's employment-related daycare costs for Adam. In addition, the court entered a modification order in which Robert was ordered to pay one-half of the uninsured medical expenses for Adam. In April 1999, Robert and Adam underwent DNA testing.

On May 19, 1999, Robert consented to the adoption of Adam by Robin's new husband, Patrick Heller. Patrick adopted Adam on July 27, 1999, and a decree of adoption was entered by the Douglas County Court.

On February 15, 2000, Robert filed a petition alleging that on April 22, 1999, following DNA testing, he determined that he was not the biological father of Adam. Robert alleged that at all

times following Adam's birth, Robin represented to him that he was Adam's biological father. Robert also stated that he could not have previously, through the exercise of reasonable diligence, determined that he was not Adam's biological father and that the circumstances were such that he was not put on inquiry by the facts surrounding the birth and subsequent care of Adam.

In his petition, Robert pled three causes of action. In his first cause of action, fraud, Robert alleged that Robin had intentionally and willfully concealed the fact that another man was Adam's biological father. Robert alleged that Robin's misrepresentation and concealment concerning Adam's paternity was made with the intention that Robert would rely on it, which he did. Robert alleged that as a direct and proximate result of Robin's concealment, he suffered damages.

In his second cause of action, assumpsit, Robert alleged that since entry of the decree in 1991, he had paid certain sums of money for child support, employment-related daycare expenses, and health insurance. Robert alleged that because he is not Adam's biological father, Robin has been unjustly enriched, and that fairness and justice require Robin to repay this money to him.

In his third cause of action, emotional distress, Robert alleged that Robin's conduct in misrepresenting and concealing the true paternity of Adam for nearly 12 years was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency so as to be considered utterly intolerable. Robert alleged that he suffered and continues to suffer emotional distress.

On August 9, 2000, Robin filed a motion for summary judgment, stating that there was no genuine issue as to any material fact and that she was entitled to judgment as a matter of law. A summary judgment hearing was held on August 28. In an order filed August 31, the trial court granted Robin's motion for summary judgment and dismissed Robert's petition. The court found that there was no genuine issue of material fact and that Robin was entitled to judgment as a matter of law. The court initially made a specific finding that Robert's causes of action were not barred by the doctrine of res judicata and the paternity finding from the earlier dissolution decree. The court made findings that there was no genuine issue of material fact concerning each of

Robert's causes of action. The court then noted that "[m]aybe res judicata is the answer after all." The court dismissed Robert's petition. Robert has filed this appeal.

## III. ASSIGNMENTS OF ERROR

On appeal, Robert argues that the trial court erred in granting Robin's motion for summary judgment. Specifically, Robert contends that the trial court erred in (1) determining that there is no genuine issue as to any material fact and (2) finding that his petition fails to state a cause of action upon which relief can be granted.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Casey v. Levine*, 261 Neb. 1, 621 N.W.2d 482 (2001). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Skinner v. Ogallala Pub. Sch. Dist. No. 1*, 262 Neb. 387, 631 N.W.2d 510 (2001).

### 2. GENUINE ISSUE OF MATERIAL FACT

Robert first challenges the court's conclusion that there was no genuine issue of material fact concerning his causes of action. Specifically, the court found that "there is no evidence of 'representation' or 'misrepresentation' made by [Robin] in the instant case" and that "reasonable people would not find [Robin's] conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency." Concerning Robert's cause of action for assumpsit, the court simply found that "this cause of action [should not] stand in the instant case." We disagree with the court's conclusion that there was no genuine issue of material fact.

The record presented to us reveals that a reasonable factfinder could find the following: Robin became pregnant during the course of her marriage to Robert, but there is evidence that the child, Adam, is not Robert's. Robin did not indicate to Robert that the paternity of Adam was in question, and Robert has asserted that there was no reason for him to suspect that such was an issue. As a result of Robin's alleged misrepresentation concerning Adam's paternity, the parties' dissolution decree indicated that Robert was Adam's father and ordered Robert to make various payments, including child support, insurance, and daycare payments. Robin's alleged misrepresentation of Adam's paternity lasted for over 12 years until Robert discovered evidence indicating that he is not Adam's father. Robert alleges that he has suffered emotional distress as a result of these circumstances.

■ On a motion for summary judgment, the question is not how a factual issue is to be decided, but whether any real issue of material fact exists. *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001). In the present case, it is apparent that the district court, rather than determining if any real issue of material fact exists, attempted to decide the factual issues, inter alia, of whether Robin misrepresented Adam's biological paternity, whether Robin's actions were intended to mislead Robert, whether Robin's actions in fact misled Robert, and whether Robin's actions resulted in harm to Robert, including both financial and emotional damages. The district court erred in so doing and erred in finding no genuine issue of material fact.

### 3. RES JUDICATA

On appeal, Robert argues that the trial court erred in granting Robin's motion for summary judgment. Robert asserts that in support of her summary judgment motion, Robin relied solely on the Nebraska Supreme Court's decision in *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994), in support of her assertion that the adjudication of paternity in the parties' dissolution decree should be res judicata and bar Robert's present tort actions. In the district court's order granting summary judgment, the court initially found that res judicata did not bar Robert's action, but later stated that "[m]aybe res judicata is the answer after all, if as in DeVaux, scientific evidence is disregarded."

Robert contends that the Nebraska Supreme Court's ruling in *DeVaux* does not preclude the filing of his action for damages in tort. We agree with Robert.

### (a) Supreme Court's Opinion in *DeVaux*

In *DeVaux v. DeVaux, supra*, Erin Colleen Zaback, formerly known as Erin Colleen DeVaux, filed an application to modify the decree dissolving her marriage to Richard Arlen DeVaux II. In the application to modify, Zaback sought specifically to have the dissolution decree's finding of paternity modified and to have the decree modified to reflect that DeVaux was not the father of a minor child born during the marriage. In her application, Zaback alleged that she had discovered through blood tests that DeVaux was not the child's natural father. Zaback sought, in addition to having the specific paternity finding modified, to have the child support and visitation provisions of the decree terminated.

DeVaux demurred to Zaback's application. In his demurrer, DeVaux asserted, inter alia, that the finding of paternity in the dissolution decree was res judicata. The trial court overruled DeVaux's demurrer and ultimately granted Zaback's application to modify. On appeal, the Nebraska Supreme Court held that the trial court erred, both in overruling DeVaux's demurrer and in granting Zaback's application to modify. Specifically, the Supreme Court held that under the doctrine of res judicata, Zaback was precluded from relitigating the dissolution decree's finding of paternity.

*DeVaux v. DeVaux, supra*, is inapposite to the present case. The most significant distinction is that in *DeVaux*, the party bringing the subsequent action was seeking to relitigate the legal finding of paternity and the attendant legal rights and responsibilities associated with such a finding, namely, visitation and child support. In the present case, Robert, by contrast, is bringing the subsequent action seeking to recover damages in tort for the fraud perpetrated upon him by Robin's allegedly outrageous conduct in willfully misrepresenting to Robert that he was Adam's father. Robert is not seeking to relitigate the legal finding of paternity made in the dissolution action and is not seeking to impact in any way the attendant legal rights and responsibilities associated with the legal finding of paternity. In fact, in

presenting his case to prove the alleged torts, part of Robert's proof will necessarily be that there is, indeed, a legal finding of paternity in the dissolution decree. This, in addition to the evidence concerning the biological relationship between Robert and Adam, will be necessary to proving the alleged torts. For that reason, Robert is not seeking in any way to alter the legal finding of paternity in the dissolution decree.

If Robert was asking the court to terminate his legal status as Adam's father, we would be more inclined to agree with the district court that *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994), might provide the answer. Robert is not, however, asking the court to terminate his legal status as Adam's father. Robert is asking the court to consider the issues of the lack of a biological relationship with Adam, Robin's alleged conduct leading Robert to believe he was the biological father, and Robin's conduct constituting the intentional infliction of emotional stress upon Robert. See *Miller v. Miller*, 956 P.2d 887 (Okla. 1998). A judgment in Robert's favor in the present case would not in any way alter the legal rights and responsibilities established by the legal finding of paternity in the parties' dissolution decree. Robert's biological connection to Adam is merely part of the proof that will be necessary to prove that certain torts may have been committed by Robin. Offering such proof regarding the lack of a biological relationship between Robert and Adam is not the same as Zaback's attempt in *DeVaux* to challenge the legal finding of paternity. As such, we disagree with the district court's conclusion that *DeVaux* provides the answer to this case.

We also note, as the district court did, that a somewhat similar issue was also addressed by the Nebraska Supreme Court in *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998). In *State on behalf of Hopkins*, the court was presented with a situation where a woman and her husband had been divorced and the former husband had been ordered to pay child support for children, including one child that was ultimately established not to be his. The State brought a paternity action on behalf of the child seeking to establish a support obligation on the biological father. The Supreme Court found that the prior dissolution decree and its finding of legal paternity did

not preclude the subsequent paternity action on the basis of res judicata because the biological father who was a party in the paternity action had not been a party in the dissolution proceedings. The Supreme Court further specifically noted that the issue of the former husband's future support obligation, after an order of support was entered against the biological father, was not before the court. This opinion seems to suggest that the holding in *DeVaux v. DeVaux, supra,* should not be read to mean that a dissolution decree's finding concerning the legal status of paternity does not, in all situations, constitute a final resolution of the issues of paternity, both biological and legal.

### (b) Claim Preclusion and Issue Preclusion

In *DeVaux v. DeVaux, supra,* the Supreme Court referred to "the doctrine of res judicata" and noted that the doctrine rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause. We have recently noted that res judicata, which refers to claim preclusion, and collateral estoppel, which refers to issue preclusion, are really two different concepts, although the two terms are often used in the literature together or interchangeably. *In re Interest of Jaden H.,* 10 Neb. App. 87, 625 N.W.2d 218 (2001). See, also, *Hickman v. Southwest Dairy Suppliers, Inc.,* 194 Neb. 17, 230 N.W.2d 99 (1975). The doctrine of res judicata, or claim preclusion, means that a final judgment on the merits is conclusive upon the parties in any later litigation involving the same cause of action. *Pipe & Piling Supplies v. Betterman & Katelman,* 8 Neb. App. 475, 596 N.W.2d 24 (1999). The doctrine of collateral estoppel, or issue preclusion, applies when an ultimate fact has been determined by a final judgment with the result that the issue cannot be litigated again between the same parties in a future lawsuit. *Id.*

Res judicata, or claim preclusion, applies if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *DeVaux v. DeVaux,* 245 Neb. 611, 514 N.W.2d 640 (1994). Collateral estoppel, or issue preclusion, applies if (1) the identical issue was decided in a

prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *In re Interest of Jaden H., supra.* The similarity in when these doctrines apply reveals how similar the doctrines can be in any given case. In *DeVaux*, the Supreme Court applied the doctrine of res judicata when the legal finding of paternity was attacked by an application to modify a dissolution decree. By contrast, the doctrine of collateral estoppel is also implicated in the present case because Robert has brought a different cause of action, involving allegations of tort, in which Robin asserts that paternity is a common issue.

### (c) Application

In attempting to apply the concepts of res judicata and collateral estoppel to the facts of the present case, the distinction between the present case and *DeVaux* that is noted above becomes of paramount importance. Specifically, it is crucial to note and remember that in the present case, Robert is not seeking to relitigate the legal finding of paternity made in the dissolution decree. Application of the doctrines of res judicata and collateral estoppel to the present case does reveal that the issue of the legal finding of paternity made in the dissolution decree cannot be relitigated.

The dissolution decree was rendered by a court of competent jurisdiction, the dissolution decree contained a final judgment on the issue of legal paternity and established attendant rights and responsibilities, and both the dissolution decree and the present action involved Robert and Robin. The only element of the doctrines of res judicata and collateral estoppel which is left open to debate is the final element of the doctrine of collateral estoppel, whether there was an opportunity to fully and fairly litigate the issue of paternity in the dissolution action when Robin allegedly misrepresented that Robert was Adam's father. However, the fact that Robert is not seeking to relitigate the legal finding of paternity renders this final question moot.

### 4. SUBSEQUENT TORT ACTIONS

Although the doctrines of res judicata and collateral estoppel arguably preclude any relitigation of the legal finding of

paternity made in the dissolution decree, the question in the instant case is whether Robert's claims for fraud, assumpsit, and intentional infliction of emotional distress are also barred by the legal finding of paternity in the dissolution decree. We conclude that Robert's causes of action are not barred because of the legal finding of paternity in the dissolution case. This precise issue of whether, after a dissolution proceeding has been finalized, someone can bring a tort action against a former spouse appears to be an issue of first impression in Nebraska.

Nebraska abolished the doctrine of interspousal immunity in the case of *Imig v. March*, 203 Neb. 537, 279 N.W.2d 382 (1979). As such, the fundamental notion of one spouse bringing a tort action against another, or against a former spouse, is not inherently prohibited. On the precise issue of whether the subsequent tort action can be grounded on facts and issues which were at issue in the dissolution proceeding, we look outside Nebraska literature for guidance, and we find that other jurisdictions which have addressed this issue have ruled in the affirmative.

### (a) Other Jurisdictions

In *Miller v. Miller*, 956 P.2d 887 (Okla. 1998), the Oklahoma Supreme Court was presented with a case that is factually almost identical to the present case. A former husband sued his former wife for damages on theories of fraud, intentional infliction of emotional distress, and quantum meruit based on allegations that the former wife had falsely represented that he was the father of her child. A divorce decree between the parties specifically included, as the decree in the present case did, a legal finding of paternity and ordered the former husband to pay child support. The Oklahoma Supreme Court recognized that despite the legal finding of paternity in the dissolution proceeding, the former husband could proceed with a tort action against the former wife precisely because his tort action did not constitute an attempt to relitigate the legal finding of paternity or to change any of the attendant rights and responsibilities which arose as a result of the legal finding of paternity in the dissolution decree.

In *G.A.W. v. D.M.W.*, 596 N.W.2d 284 (Minn. App. 1999), the Minnesota Court of Appeals held that a former husband's tort claims against his former wife for fraud and emotional distress

were not barred by the doctrines of res judicata or collateral estoppel or by public policy considerations. The former husband's tort claims were based specifically on his allegations that his former wife had misrepresented to him that he was the father of two minor children born during the marriage, despite her knowledge otherwise. Additionally, the fact that the former husband became aware that he was not the children's father during the dissolution proceedings and the parties entered into a dissolution settlement including a clause releasing him from child support and maintenance obligations did not prevent him from later bringing a tort action based on the former wife's actions.

Several other jurisdictions have also held that issues litigated in a dissolution proceeding do not preclude a later tort action. In *McCulloh v. Drake*, 24 P.3d 1162 (Wyo. 2001), the Supreme Court of Wyoming held that a civil action in tort is fundamentally different from a divorce proceeding and ruled that tort claims could not be joined with dissolution proceedings. As such, the Wyoming court specifically held that principles of res judicata would not bar the former wife's later tort actions, even though Wyoming's allowance of fault factors in the dissolution proceeding resulted in the same issues which served as the basis for the subsequent tort action having been litigated in the dissolution proceeding. According to the Wyoming court, even the goal of promoting judicial economy is not significant enough to override the fact that the two proceedings are fundamentally different. In *Sotirescu v. Sotirescu*, 52 S.W.3d 1 (Mo. App. 2001), and *Henriksen v. Cameron*, 622 A.2d 1135 (Me. 1993), the Missouri Court of Appeals and the Supreme Court of Maine, respectively, similarly held that res judicata did not bar a former wife's tort claims against her former husband even though the tort claims arose out of facts and issues which had been at issue during the dissolution proceedings.

Finally, in *County of Fresno v. Ruiz*, 66 Cal. App. 4th 1432, 79 Cal. Rptr. 2d 684 (1998) (ordered not published by California Supreme Court on January 13, 1999), the California Court of Appeals took the issue even one step further. In *Ruiz*, the California court held that a man whose legal paternity had been established by a default judgment was entitled to have the default judgment set aside 7 years later on the basis of fraud

where the mother of the child had misrepresented to the man that he was the father of her child.

Our research reveals no case factually comparable to the present case where any appellate court has used res judicata or collateral estoppel to preclude a subsequent tort action despite the basis of the tort action involving issues and facts which were determined during an earlier dissolution proceeding. This is true, although other jurisdictions have ruled similarly to *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994), on facts more comparable to *DeVaux*. See, *Ghrist v. Fricks*, 219 Ga. App. 415, 465 S.E.2d 501 (1995) (legal finding of paternity made in dissolution decree cannot be challenged in subsequent paternity action); *Slagle v. Slagle*, 11 Va. App. 341, 398 S.E.2d 346 (1990) (legal finding of paternity made in dissolution decree cannot be challenged in subsequent proceeding to modify child support); *Com. ex rel. Coburn v. Coburn*, 384 Pa. Super. 295, 558 A.2d 548 (1989) (legal finding of paternity made in dissolution decree cannot be challenged in subsequent contempt of child custody proceeding). Indeed, in *Cornelius v. Cornelius*, 15 P.3d 528 (Okla. App. 2000), the Oklahoma Court of Appeals recognized that the parties to a dissolution proceeding cannot generally challenge the legal finding of paternity in such proceedings as actions to modify child support. See, also, *Arnold v. Arnold*, 207 Okla. 352, 249 P.2d 734 (1952). Nonetheless, when presented with a factual situation comparable to the one in the present case, the Oklahoma Supreme Court, as noted above, reached the result we reach today. See *Miller v. Miller*, 956 P.2d 887 (Okla. 1998).

### (b) Resolution

We conclude, on the basis of the reasoning of the various courts discussed above, that Robert's tort actions should not be precluded simply because there was a legal finding of paternity in the earlier dissolution proceeding. We conceptualize Robert's present action differently from the trial court and conclude that Robert's present action is not one to establish or disestablish legal paternity of Adam and the attendant rights and responsibilities of such a finding. Indeed, the legal finding of paternity made in the dissolution decree is not only part of the proof Robert will need to establish his present torts, but any judgment

in his favor on the alleged torts will not have any impact on the legal finding of paternity made in the dissolution proceeding. See *Miller v. Miller, supra.*

As the Oklahoma Supreme Court stated:

> Plaintiff in the present case is not disputing paternity as it relates to any of the rights and responsibilities established between him and A [minor child]. Rather, in this tort action, plaintiff's biological nexus to A is the sole issue. *The relief plaintiff seeks is not a change of legal status, but damages in tort.* A judgment establishing the legal status of paternity in a divorce proceeding may not be invoked to bar a determination of biological paternity in a tort action based upon the kind of fraudulent conduct alleged here.

(Emphasis in original.) 956 P.2d at 897-98. To rule otherwise would effectively leave Robert with no remedy or recourse whatsoever for Robin's alleged tortious conduct.

We further note that the particular factual circumstances of the present case render this result all the more appropriate. In *DeVaux v. DeVaux*, 245 Neb. at 619-20, 514 N.W.2d at 646, quoting *Hackley v Hackley*, 426 Mich. 582, 395 N.W.2d 906 (1986), the Nebraska Supreme Court noted, " 'There is no more forceful example of the rationale underlying the requirement of finality of judgments than the chaos and humiliation which would follow from allowing [persons] to challenge, long after a final judgment has been entered, the legitimacy of children born during their marriages.' " However, in the present case, Robert has already consented to the adoption of Adam by Robin's husband, and a decree of adoption has been entered by the Douglas County Court. Not only is Robert's action not seeking to alter any of the rights and responsibilities attendant to the legal finding of paternity made in the dissolution decree, but the chaos and humiliation of which the *DeVaux* court was mindful is not a concern in the present case.

On the record before us, the only basis for finding that summary judgment was appropriate was the trial court's ultimate conclusion that Robert's causes of action were barred by res judicata. For all the reasons stated herein, we conclude that the court erred in reaching that conclusion. As such, there is no appropriate basis for finding that there is no genuine issue of

material fact and that Robin is entitled to judgment as a matter of law. See *Casey v. Levine*, 261 Neb. 1, 621 N.W.2d 482 (2001). When we view the evidence in a light most favorable to Robert and give Robert the benefit of all reasonable inferences deducible from the evidence, summary judgment should not have been granted. See *Skinner v. Ogallala Pub. Sch. Dist. No. 1*, 262 Neb. 387, 631 N.W.2d 510 (2001). As such, the district court's grant of summary judgment must be reversed and the matter remanded for further proceedings.

## V. CONCLUSION

After reviewing the record, we conclude that the district court erred in finding that there was no genuine issue of material fact and that Robert's claims were barred by res judicata. Therefore, the court erred in granting summary judgment in favor of Robin and dismissing Robert's claim. The order of the district court is reversed, and the matter is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.