LINCOLN LUMBER COMPANY, A NEBRASKA CORPORATION,
APPELLANT AND CROSS–APPELLEE, V. KERWIN FOWLER AND
MAVIS FOWLER, APPELLEES AND CROSS–APPELLANTS.

533 N.W.2d 898

Filed June 16, 1995.   No. S–93–785.

Douglas D. DeLair, of DeLair & DeLair, for appellant.

John C. Hahn, of Jeffrey, Hahn & Hemmerling, P.C., for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ., and RONIN, D.J., Retired.

FAHRNBRUCH, J.

Plaintiff, Lincoln Lumber Company, a Nebraska corporation, appeals a district court order dismissing its petition seeking $25,905.82 in alleged unpaid interest from the guarantors of Fowler Custom Homes, Inc., Mavis Fowler and Kerwin Fowler.

The district court for Lancaster County dismissed Lincoln Lumber's petition because the court previously held in a case against Mavis Fowler that Lincoln Lumber charged a usurious rate of interest on a promissory note. In the instant lawsuit, the trial court found that Lincoln Lumber had released the separate guaranties of Mavis Fowler and Kerwin Fowler.

In this court, the Fowlers cross-appeal, claiming they are entitled to attorney fees because Lincoln Lumber's lawsuit is "frivolous" and their counterclaim in the district court for attorney fees should have been granted.

We affirm the judgment of the trial court in part, reverse it in part, and remand the cause to the district court for further proceedings.

## I. ASSIGNMENTS OF ERROR

Lincoln Lumber claims that the trial court erred in (1) finding that the rate of interest was usurious, (2) applying the court's judgment in a prior action filed by Lincoln Lumber against Mavis Fowler in dismissing Lincoln Lumber's petition, and (3) finding that Lincoln Lumber released each of the Fowlers' guaranties.

In their cross-appeal, the Fowlers assign that the trial court erred in not awarding attorney fees on the ground of a frivolous lawsuit.

## II. STANDARD OF REVIEW

In a bench trial of a law action, the trial court's factual findings have the effect of a verdict and will not be set aside on appeal unless they are clearly wrong. *First Westside Bank v. For–Med, Inc.*, 247 Neb. 641, 529 N.W.2d 66 (1995). An appellate court has an obligation to reach conclusions on questions of law independent of the trial court's ruling. *Jindra v. Clayton*, 247 Neb. 597, 529 N.W.2d 523 (1995).

On appeal, a trial court's decision allowing or disallowing an attorney fee under Neb. Rev. Stat. § 25–824 (Reissue 1989) will be upheld in the absence of the trial court's abuse of discretion. *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993).

It is necessary to discuss the action against the two Fowlers separately because Mavis Fowler and Kerwin Fowler signed separate personal guaranties. In addition, Mavis Fowler alone signed a promissory note. Different rules of law are applicable to each of the Fowlers.

## III. ACTION AGAINST MAVIS FOWLER

### 1. FACTS

On July 26, 1990, Lincoln Lumber filed an amended petition against Mavis Fowler, individually, seeking judgment on a $60,318.24 promissory note she had personally issued to Lincoln Lumber, which equaled in amount the debt Fowler Custom Homes owed to Lincoln Lumber. Lincoln Lumber alleged that on December 12, 1989, Mavis Fowler executed a personal promissory note and failed to pay the principal of the debt owing to Lincoln Lumber. Mavis Fowler's note purportedly bore interest at the rate of 2 percent per month on the unpaid balance of the promissory note. The evidence reflects that Lincoln Lumber wanted a personal promissory note from Mavis Fowler in order to secure the Fowler Custom Homes and Kensington Park Partnership accounts. The record reflects that, at all times relevant, Kerwin Fowler held 50 percent of Fowler Custom Homes' stock and was the chief operating officer of the corporation and that Mavis Fowler was a corporate officer of Fowler Custom Homes.

After the trial in the promissory note case, the district court,

on February 19, 1992, found that the principal amount owed Lincoln Lumber on Mavis Fowler's promissory note was $31,927.24. The court also held that the interest rate of 24 percent per annum contained in the promissory note exceeded the statutory rate allowed by Neb. Rev. Stat. § 45-101.03 (Reissue 1988). The court held that a 24-percent rate of interest was usurious and was not collectible from Mavis Fowler as an individual. The judgment of the court was not appealed by Lincoln Lumber and became final. The record reflects that Mavis Fowler paid the $31,927.24 judgment to Lincoln Lumber by April 6, 1992. That payment was applied by Lincoln Lumber in satisfaction of Fowler Custom Homes' indebtedness of principal to Lincoln Lumber.

On December 12, 1989, the same date that Mavis Fowler executed the previously litigated promissory note, she also signed a guaranty with Lincoln Lumber. In the guaranty, Mavis Fowler unconditionally promised to pay any sum or balance on the account of Fowler Custom Homes with Lincoln Lumber after the debt "becomes due and is not paid within 10 days after receiving the written demand" from Lincoln Lumber. Lincoln Lumber's petition and exhibit 10 in this lawsuit reflect that the only principal indebtedness upon which Lincoln Lumber filed its lawsuits was that of Fowler Custom Homes.

It is undisputed that Lincoln Lumber charged an interest rate of 24 percent per annum on the guaranty and the previously litigated promissory note.

On June 8, 1992, slightly less than 4 months following the entering of the judgment in the action against Mavis Fowler, Lincoln Lumber filed a petition against the Fowlers, seeking $25,905.82 plus prejudgment interest. It is undisputed that the $25,905.82 represented alleged unpaid interest on only the Fowler Custom Homes account. Lincoln Lumber alleged that the debt of Fowler Custom Homes to Lincoln Lumber was payable in full by the guarantors within 10 days after the guarantors received the written demand. Lincoln Lumber alleged that Mavis Fowler was liable as guarantor for the Fowler Custom Homes debt as a result of her personal guaranty executed on December 12, 1989.

The Fowlers affirmatively alleged. that Lincoln Lumber's

action was barred by res judicata due to the previous district court judgment dated February 19, 1992.

At a bench trial, Don Hamill, president of Lincoln Lumber, agreed under cross-examination that the debt alleged in the petition represented the interest that Lincoln Lumber sought in the prior action against Mavis Fowler. Beverly Hamill, the office manager in charge of books for Lincoln Lumber, testified that of the original $60,318.24 owed Lincoln Lumber by Fowler Custom Homes, the principal was paid in full and the remaining balance for which suit was instituted was for the unpaid service charge.

On August 2, 1993, the district court dismissed Lincoln Lumber's petition. The court found that Lincoln Lumber sought to collect a usurious rate of interest as determined in a prior action.

## 2. ANALYSIS

The doctrine of res judicata bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Wicker v. Vogel*, 246 Neb. 601, 521 N.W.2d 907 (1994).

The district court for Lancaster County, a court of competent jurisdiction, entered a final judgment on February 19, 1992, regarding an action brought by Lincoln Lumber against Mavis Fowler for allegedly failing to pay the principal and interest due on a promissory note executed on December 12, 1989. The district court, ruling on the merits, awarded Lincoln Lumber only the amount owed on the principal and disallowed any interest claimed because the court found it to be usurious.

A distinction does exist, in that the first litigation against Mavis Fowler was based upon a promissory note and the second upon a guaranty. The promissory note and the guaranty, however, were executed on the same date backing up the same principal debtor for the same principal amount and the same interest rate. When different proof is required to establish a

cause, a judgment in one action does not preclude another action. See *Cockle v. Cockle*, 215 Neb. 329, 339 N.W.2d 63 (1983). In the case at bar, the proof required of Lincoln Lumber to prevail against Mavis Fowler is that Fowler Custom Homes defaulted on its indebtedness to Lincoln Lumber and that Mavis Fowler breached her contractual duty to pay in full the same debt previously litigated.

Any right, fact, or matter in issue and directly adjudicated upon, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether the claim or demand, purpose, or subject matter of the two suits is the same or not. *Commercial Fed. Sav. & Loan Assn. v. Matt*, 232 Neb. 26, 439 N.W.2d 463 (1989). The judgment in a former action between the same parties is final as to every issue which could have been decided in that action. *Id*. The doctrine of res judicata bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in an earlier proceeding. *Hangman v. Bruening*, 247 Neb. 769, 530 N.W.2d 247 (1995). The doctrine of res judicata rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause. *Id*.

Lincoln Lumber could have included, as a part of its first lawsuit against Mavis Fowler, its theory which it alleges in this lawsuit, that she was also liable under her guaranty. There is no reason why Mavis Fowler should be vexed by forcing her to submit to two lawsuits to satisfy a single indebtedness to Lincoln Lumber.

As a result, Lincoln Lumber is barred from bringing its current action against Mavis Fowler.

## IV. ACTION AGAINST KERWIN FOWLER

### 1. FACTS

Kerwin Fowler signed a guaranty with Lincoln Lumber on September 7, 1985. Kerwin Fowler unconditionally promised to pay any sum or balance on the accounts of "Fowler Custom Homes, Mr. & Mrs. Kerwin Fowler, &. Kensington Apts." owed

to Lincoln Lumber after the debt "becomes due and is not paid, within 10 days after receiving the written demand" from Lincoln Lumber.

The record shows that on September 8, 1988, Kerwin Fowler signed another guaranty to pay the balance on the accounts of Fowler Custom Homes and Kensington Apartments owed to Lincoln Lumber.

The 1988 guaranty differs from the 1985 guaranty in two ways. First, the 1985 guaranty obligates the debtor to pay collection costs incurred in enforcing the guaranty whereas the 1988 guaranty obligates the guarantor to pay the collection costs. Second, the 1985 guaranty granted Lincoln Lumber a security interest in the guarantor's equipment, inventory, accounts, general intangibles, and chattel paper. The 1988 guaranty granted Lincoln Lumber an additional lien against the property in the possession of "each guarantor."

It is undisputed that Lincoln Lumber charged a 24–percent rate of interest per annum on the account of the guarantor of Fowler Custom Homes. The record further reflects that Lincoln Lumber was compounding the interest.

On December 12, 1989, Lincoln Lumber released the guaranty signed by Kerwin Fowler on September 8, 1988, for debts held by Fowler Custom Homes and Kensington Apartments. The record does not, however, indicate that the guaranty signed on September 7, 1985, was released.

In the petition filed against the Fowlers, Lincoln Lumber alleged that Kerwin Fowler was liable for the unpaid interest due on the account of Fowler Custom Homes based upon his signed guaranty of September 7, 1985.

The district court dismissed the petition on the ground of res judicata, discussed above, and also found that Lincoln Lumber released the guaranty made by Kerwin Fowler.

## 2. Analysis

### (a) Release of Guaranty

The record reflects that on December 12, 1989, Lincoln Lumber released Kerwin Fowler from only his 1988 guaranty and not the guaranty in question, signed on September 7, 1985. The language in the 1988 guaranty does not purport to act as a

substitute for the 1985 guaranty. Thus, the release from the later obligation has no effect on the earlier obligation.

The bill of exceptions contains exhibit 17, which reflects that on December 12, 1989, Lincoln Lumber released guaranties made by Fowler Custom Homes and Kensington Apartments on September 7, 1985, and September 8, 1988, regarding three lots in the Kensington Park Subdivision, Lincoln; Lot 24, Block 1, corrected Plat of Trendwood 8th addition, Lincoln; and Lot 22, Block 4, Normandy Square Replat, Lincoln. Exhibit 17 is relied upon, in part, by the district court in its finding that Lincoln Lumber released Kerwin Fowler from the guaranty. However, there is nothing in the record to show that the trial court received exhibit 17 into evidence following a foundational objection by counsel for Lincoln Lumber. In a law action, before an appellate court can consider evidence bearing upon an issue of fact, evidence must have been offered at the trial court and embodied in the bill of exceptions filed with the appellate court. See *Smick v. Langvardt*, 216 Neb. 778, 345 N.W.2d 830 (1984).

In any event, the document purports to release guaranties made by Fowler Custom Homes and Kensington Apartments and does not release the September 7, 1985, guaranty made by Kerwin Fowler, personally.

Based upon the record before this court, the district court erred in finding that Lincoln Lumber released the guaranty executed by Kerwin Fowler on September 7, 1985.

### (b) Interest Rate

We next consider whether the interest rate of 24 percent per annum charged against Kerwin Fowler violates the statute on usury. We only consider this issue in regard to Kerwin Fowler, because the cause of action as it relates to Mavis Fowler is barred under the doctrine of res judicata, the trial court having previously ruled on the issue in its judgment of February 19, 1992, from which Lincoln Lumber did not appeal.

At all relevant times involved in this lawsuit, § 45-101.03 (Reissue 1993) and its predecessor set the maximum interest rate at 16 percent, subject to exceptions enumerated in Neb. Rev. Stat. § 45-101.04 (Cum. Supp. 1994) and its predecessors.

Section 45–101.04 states: "The limitation on the rate of interest provided in section 45–101.03 shall not apply to: . . . (3) The guarantor or surety of any loan to a corporation, partnership, limited liability company, or trust . . . ."

Kerwin Fowler was guarantor of an indebtedness to Lincoln Lumber, a corporation, by Fowler Custom Homes, another corporation. Because Kerwin Fowler was a guarantor of a corporate debt which included a legal interest rate between two corporations, his obligation as a guarantor could not be defeated by the statute against a usurious interest rate involving an individual. See *McCaul v. American Savings Co.*, 213 Neb. 841, 331 N.W.2d 795 (1983).

Lincoln Lumber, however, cannot seek compounded interest from Kerwin Fowler. In the absence of a contract or statute, compensation in the form of compound interest is not allowed to be computed upon a debt. *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 520 N.W.2d 189 (1994). The guaranty and credit application signed by Kerwin Fowler do not specify compound interest. Therefore, although Lincoln Lumber claims that the amount it seeks is increasing due to compounding interest, Lincoln Lumber's recovery is limited to simple interest on a principal that was paid in full on April 6, 1992.

## V. ATTORNEY FEES

The Fowlers also filed a counterclaim alleging that Lincoln Lumber, in bad faith, filed a frivolous petition. Pursuant to § 25–824, the Fowlers sought attorney fees incurred in defending against the allegedly frivolous petition. The district court dismissed the counterclaim.

In their cross–appeal, the Fowlers assign that the district court erred in not awarding attorney fees for an allegedly frivolous lawsuit pursuant to § 25–824. Frivolous for the purposes of § 25–824 is defined as being a legal position wholly without merit, that is, without rational argument based on law and evidence to support a litigant's position in the lawsuit. *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994).

An action is frivolous or in bad faith if a party attempts to

relitigate the same issue previously resolved in an action involving the same party. *Sports Courts of Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993). Rather than appealing the district court finding that a 24–percent interest rate against Mavis Fowler's promissory note is usurious, Lincoln Lumber, within 4 months of the previous order, sued Mavis Fowler a second time, seeking to collect the same interest that the district court had already disallowed. A proliferation of actions on issues already adjudicated engenders disrespect for the law, unnecessarily adds to an overburdened judicial caseload, and will not be tolerated. See *Graham v. Waggener*, 219 Neb. 907, 367 N.W.2d 707 (1985).

Thus, the district court abused its discretion in not awarding Mavis Fowler attorney fees because of the frivolous action filed by Lincoln Lumber.

## VI. CONCLUSION

We affirm the judgment of the district court to the extent that the action against Mavis Fowler was barred by the doctrine of res judicata. We reverse the dismissal of Mavis Fowler's counterclaim and instruct the district court to award her attorney fees pursuant to § 25–824.

We reverse the judgment of the district court as to Kerwin Fowler. Kerwin Fowler remains the guarantor of the debts held by Fowler Custom Homes to Lincoln Lumber and must pay the interest accrued upon the principal debt. We remand this cause to the district court for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.