IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

HOHENSTEIN V. HOHENSTEIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KURT HOHENSTEIN, APPELLANT,

V.

WILLIAM N. HOHENSTEIN ET AL., APPELLEES.

Filed September 12, 2023.    No. A-22-278.

Appeal from the District Court for Dakota County: BRYAN C. MEISMER, Judge. Affirmed.

Kurt Hohenstein, pro se.

Andrew T. Schlosser and Susan J. Spahn, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellees, William N. Hohenstein II; Jill Hohenstein; Vicki Hohenstein; Susan J. Spahn; Andrew T. Schlosser; and Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O.

Jonathan M. Brown, of Walentine O'Toole, L.L.P., for appellee, Walentine, O'Toole, McQuillen & Gordon, L.L.P.

Brian S. Koerwitz, of Peetz, Koerwitz & Lafleur, P.C., L.L.O., for appellee, Peetz, Koerwitz & Lafleur, P.C., L.L.O., formerly known as Endacott, Peetz, Timmer & Koerwitz, P.C., L.L.O.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Kurt Hohenstein, pro se, appeals from an order of the district court for Dakota County which dismissed his action for failure to state a claim upon which relief could be granted. He disputes the court dismissing his complaint, overruling his motion for recusal of the trial court

- 1 -

judge, and ordering him to pay sanctions for frivolous or bad faith conduct. Based on the reasons that follow, we affirm.

## BACKGROUND

Kurt brought the present action against William N. Hohenstein II; Jill Hohenstein, personal representative of the Estate of James B. Hohenstein; Vicki Hohenstein, personal representative of the Estate of Douglas W. Hohenstein; Susan J. Spahn; Walentine, O'Toole, McQuillan & Gordon, L.L.P.; Endacott, Peetz, Timmer & Koerwitz, P.C. L.L.O.; Andrew T. Schlosser; and Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.C. William II, James, and Douglas are Kurt's siblings. James and Douglas are deceased and the case was brought in the names of their surviving spouses as personal representatives. The other named defendants are lawyers and law firms who have represented the siblings and personal representatives during the litigation.

This case is based upon the same operative facts as another case brought in the district court for Dakota County, specifically, case No. CI 13-226 (the "underlying litigation"). We begin by setting forth the relevant background and facts in that case.

### UNDERLYING LITIGATION

Kurt, Douglas, James, and William II are all children of William Hohenstein and Lillian Hohenstein. The underlying litigation arose from a dispute among the four children concerning stock purchase agreements and ownership interests in the family farm.

William and Lillian incorporated their farming operation in 1976 as Cottonwood Flats, Inc. William and Lillian initially owned all of the stock in Cottonwood Flats, but made gifts of stock to each of their children over the years. William and Lillian also established certain trusts as part of their estate planning. Douglas, James, and William II (plaintiffs), were the original plaintiffs in the underlying litigation and were each shareholders in Cottonwood Flats. Douglas and James died before entry of the final order in the underlying litigation and the case was revived in the names of their surviving spouses as personal representatives. Kurt is also a shareholder in Cottonwood Flats and was a defendant in the underlying litigation. William and Lillian had a fifth child, Sarah Mertes, who died in 2011 before the underlying litigation was filed, and her heirs were not made parties.

The plaintiffs filed their original complaint in the underlying case on November 7, 2013. They filed an amended complaint on August 26, 2014, both individually, and derivatively on behalf of Cottonwood Flats, against Lillian, individually, and as trustee of two different trusts, and as director and officer of Cottonwood Flats, and against Kurt, individually, and as director and officer of Cottonwood Flats. Various contracts between Lillian and Kurt were at issue in the underlying litigation, two of which were referred to as the 1994 Agreement and the 2002 Agreement. The 1994 Agreement involved an agreement between Lillian and Kurt in which Kurt was given the right to purchase shares of Cottonwood Flats and the parties to the agreement would establish the price for such purchase. The 2002 Agreement set out additional terms regarding the 1994 Agreement, including a provision that the valuation of the shares in the corporation be fixed and remain the same without regard to the actual or fair value of the shares. Regarding those contracts, the plaintiffs alleged they did not learn of the existence of either the 1994 Agreement or the 2002 Agreement until on or after July 26, 2010. The plaintiffs set forth claims for breach of

fiduciary duty, sought both a corporate and a trust accounting, set forth claims for fraud/constructive fraud and undue influence/lack of capacity, and sought declaratory and injunctive relief.

Kurt filed a motion to dismiss in the underlying litigation asserting the statute of limitations as a defense to plaintiffs' claims. The trial court denied Kurt's motion to dismiss. The court noted that the statute of limitations for fraud does not begin to run until the discovery of facts sufficient to put an ordinary person on notice of the potential cause of action. The court stated that the complaint was filed on November 7, 2013, within 4 years of the 2010 stock sale and July 26, 2010, the date when the plaintiffs alleged they were placed on notice of the basis for their complaint.

Kurt subsequently filed an answer and counterclaim in the underlying litigation, asserting again that the plaintiffs' claims were barred by the statute of limitations because the plaintiffs had notice of the agreements at issue since 1994.

Trial for the underlying litigation was held in April 2017. Following trial, the court entered an order in February 2019, which it later amended in May. The court addressed Kurt's statute of limitations defense and specifically found the plaintiffs "were not on notice of the 1994 and 2002 Agreements until 2010," and their claims were not barred by the statute of limitations. The trial court's order also made specific findings regarding the contracts to which Kurt was a party. It found that Kurt breached his fiduciary duties in multiple ways, engaged in a pattern of self-dealing with respect to Cottonwood Flats, and exerted undue influence over his mother. As a result, the court voided the agreements Kurt had with Lillian. Kurt filed a motion for new trial, which the court overruled.

Kurt appealed the court's May 2019 amended order. In November, this court dismissed his appeal for lack of jurisdiction, as the trial court had not disposed of all the claims of all the parties, as required by Neb. Rev. Stat. § 25-1315(1) (Reissue 2016).

In December 2019, Kurt filed an amended motion to vacate the trial court's May 2019 amended order. At that point the case had been assigned to a new judge, Judge Bryan Meismer, because the original trial judge had retired on May 30. Kurt argued that the matters the Court of Appeals determined needed resolution before an appeal could be taken could not be resolved because the judge who presided over the trial was not the same judge presiding over the case at the time. He also argued that the trial court failed to exercise its independent judgment because it adopted the plaintiffs' proposed order verbatim, and the order was the result of fraudulent statements made by the plaintiffs in their proposed order. Such alleged fraudulent statements included the plaintiffs' assertion throughout the proceedings that they did not learn of the existence of either the 1994 Agreement or the 2002 Agreement until on or about July 26, 2010. The trial court denied the amended motion to vacate.

In April 2020, Kurt filed a second appeal in the underlying case from the trial court's order denying his amended motion to vacate. In May, this court dismissed his appeal for lack of jurisdiction because there still had not been a disposition of all the claims of all the parties as required by § 25-1315(1)

On January 3, 2022, the trial court entered a final order in the underlying litigation, entering judgment against Kurt. Kurt filed an appeal in the underlying litigation in February 2022. This court affirmed the trial court's order except regarding its award of attorney fees which we reversed

- 3 -

and remanded with directions. See *Hohenstein v. Hohenstein*, No. A-22-108, 2023 WL 5217713 (Neb. App. Aug. 15, 2023) (unpublished opinion).

PRESENT CASE

For the sake of clarity, the defendant lawyers and law firms in the present case will be referred to as "counsel"; William II and the personal representatives of James and Douglas will be referred to as "Kurt's siblings"; and all the defendants will collectively be referred to as "appellees."

Kurt filed the present action on January 7, 2022, alleging three causes of action in his complaint: civil conspiracy to tortuously interfere with contracts, tortious interference with contracts, and fraud. The factual allegations in his complaint stem almost entirely from the underlying litigation, and the three causes of action are all based on the appellees' alleged misconduct in the underlying litigation.

The complaint alleges misconduct on the part of the appellees regarding pleadings and factual allegations in the underlying litigation. Specifically, Kurt alleges the appellees falsely asserted that they were unaware of the 1994 Agreement and the 2002 Agreement until July 2010, which allowed the court to deny his statute of limitations defense. Kurt's complaint states that when William II, James, and Douglas filed their amended complaint in the underlying litigation, they knew certain statements they made were false, would mislead the court, and would cause interference in the contracts of which Kurt was a party. The complaint also alleges that the purpose of the false statements was to prevent the trial court from using the statute of limitations to dismiss their amended complaint in the underlying litigation.

The complaint in the present case further alleges that in the underlying litigation, Kurt's siblings, acting with counsel, delivered discovery documents, sworn statements during depositions, affidavits, and evidence at trial that was knowingly false and was intended to, and ultimately did, interfere with Kurt's contracts. Kurt asserts that the improper acts of the appellees resulted in the breaches of contracts, which caused him damages. Kurt alleges the appellees are liable for damages arising from the judgment that was entered against him in the underlying litigation. He asked for damages for the loss of the value of the contracts made void by the underlying litigation.

All the allegations set forth in Kurt's complaint, arise out of the pleadings, discovery, testimony, and trial court's order from the underlying litigation. His complaint is a mere recitation of alleged wrongs he suffered during the course of the underlying litigation.

In February 2022 the appellees filed three separate motions to dismiss, alleging that Kurt's complaint failed to state a claim upon which relief could be granted. The appellees alleged that the claims in Kurt's complaint were all related to issues which had been fully litigated in the underlying litigation and for which the court had ruled against Kurt in a final judgment. They alleged that as a result of the judgment in the underlying litigation, Kurt's claims in this matter were barred due to claim preclusion and/or issue preclusion. The appellees also asserted that Kurt's complaint was frivolous and/or made in bad faith and they sought attorney fees and costs pursuant to Neb. Rev. Stat. § 25-824 (Reissue 2016).

On March 7, 2022, Kurt filed a motion for recusal of the trial judge, Judge Meismer. The motion stated that there was no conflict under Neb. Rev. Stat. § 24-739 (Reissue 2020) that would

require the trial judge to recuse himself but alleged that the judge should recuse himself because he may be called as a witness "to ascertain relevant factual evidence unavailable from any other source." The trial court denied Kurt's motion for recusal.

At the hearing on the motions to dismiss, the appellees asked the court to take judicial notice of certain pleadings from the underlying litigation and offered them into evidence. Kurt said he had a general objection to use of the exhibits in a motion to dismiss hearing, but he had no objection to the court taking judicial notice of the entire file in the underlying litigation. The court received the exhibits into evidence and also took judicial notice of the entire file from the underlying judgment.

On April 8, 2022, the court entered an order finding that the issues Kurt was raising were the same issues litigated in the underlying litigation and, therefore, barred by issue preclusion. The court granted the appellees' motions to dismiss, finding Kurt's complaint failed to state a claim upon which relief could be granted, and ordered sanctions against Kurt and in favor of counsel for bringing the action frivolously or in bad faith.

## ASSIGNMENTS OF ERROR

Kurt assigns that the trial court erred in (1) dismissing his complaint for failure to state a cause of action, (2) overruling his motion to recuse, and (3) ordering sanctions against Kurt and in favor of counsel only.

## STANDARD OF REVIEW

An appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim. *Millennium Laboratories v. Ward*, 289 Neb. 718, 857 N.W.2d 304 (2014). When analyzing a lower court's dismissal of a complaint for failure to state a claim, an appellate court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Myers v. Nebraska Invest. Council*, 272 Neb. 669, 724 N.W.2d 776 (2006).

The applicability of issue preclusion is a question of law. See *Hill v. AMMC, Inc.*, 300 Neb. 412, 915 N.W.2d 29 (2018). On a question of law, an appellate court reaches a conclusion independent of the court below. *Id.*

A motion requesting a judge to recuse himself or herself is initially addressed to the discretion of the judge to whom the motion is directed. *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004). An order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *Id.*

On appeal, a trial court's decision allowing or disallowing an attorney fee under § 25-824 will be upheld in the absence of the trial court's abuse of discretion. *Lincoln Lumber Co. v. Fowler*, 248 Neb. 221, 533 N.W.2d 898 (1995).

## ANALYSIS

### APPELLEES' MOTIONS TO DISMISS

We first note that Kurt argues that the trial court erred when it admitted exhibits into evidence at the hearing on the motions to dismiss without giving him notice that it had converted the motions to dismiss to motions for summary judgment. Generally, when matters outside the pleading are presented by the parties and accepted by the trial court with respect to a motion to

dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(6), the motion shall be treated as a motion for summary judgment and the parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by statute. *Brothers v. Kimball Cty. Hosp.*, 289 Neb. 879, 857 N.W.2d 789 (2015).

Although Kurt argues in his appellate brief that the trial court erred in admitting the exhibits into evidence, he did not assign this as error. In order to be considered by an appellate court, the party asserting the alleged error must both specifically assign and specifically argue it in the party's initial brief. *Dycus v. Dycus*, 307 Neb. 426, 949 N.W.2d 357 (2020). Because Kurt has failed to assign and argue an error regarding the court's receipt of exhibits, we need not address it further.

Kurt first assigns that the trial court erred in dismissing his complaint for failure to state a cause of action. The trial court granted the appellees' motions to dismiss Kurt's complaint on the ground that issue preclusion applied.

Kurt argues that issue preclusion does not apply in the present case because the underlying litigation did not involve any claims of tortious interference, and when the alleged facts in his complaint are taken as true they show that the appellees engaged in a conspiracy that involved false statements of both fact and law in order to deceive the trial court in the underlying litigation. He asserts the appellees' acts denied him the affirmative defense of the statute of limitations which would have barred the underlying lawsuit. He further claims that the court's decision based on the appellees' false statements caused the breach of various contracts in which Kurt was a party, and the breach of those contracts caused him damages as set out in his complaint.

Issue preclusion means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties or their privies in any future lawsuit. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019). Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014).

Issue preclusion is not limited to cases involving identical parties:

Identity of parties is not necessary to give validity to a claim of issue preclusion. A stranger to a primary suit can assert the theory of issue preclusion as a defense in a subsequent suit provided other elements of the theory of issue preclusion coincide. . . . Here it would again appear obvious that the person who once loses after having had his day in court would not be reasonable in expecting to be able to recover later when he sues someone not a party to the first suit. It is completely reasonable to hold that the nonparticipating nonparty to the first suit is able to assert preclusion against a plaintiff in the second suit if the plaintiff in Suit II was a losing party in the first suit, regardless of the position he occupied in Suit I.

*JED Constr. Co., Inc. v. Lilly*, 208 Neb. 607, 612, 305 N.W.2d 1, 3-4 (1981). Accordingly, the fact that Kurt brought the present action against counsel in addition to his siblings, does not bar application of issue preclusion.

The specific elements of issue preclusion are as follows: (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. See *Hara v. Reichert, supra.* Issue preclusion applies only to issues actually litigated. *Id.* Issue preclusion

protects litigants from relitigating an identical issue with a party or his privy and promotes judicial economy by preventing needless litigation. *Id.*

The trial court found that all four elements necessary for issue preclusion exist in the case. We agree. The first element of issue preclusion requires that the identical issue was decided in a prior action. Although Kurt argues that issue preclusion does not apply because the legal theory in the present case is new, the issue is the same as in the underlying litigation--that the appellees deceived the trial court to obtain a judgment. Kurt argues that the claims in the underlying litigation should have been barred by the statute of limitations, but Kurt's siblings lied in their pleadings and throughout the case to fraudulently survive the statute of limitations and the trial court relied on the misrepresentations, ruling in favor of Kurt's siblings and causing Kurt damages. Specifically, in his complaint in the present case Kurt alleged that his siblings in the underlying action falsely asserted they were unaware of the 1994 Agreement and the 2002 Agreement until July 2010. This same issue was alleged by Kurt in the underlying litigation and decided by the trial court. Kurt asserted the statute of limitation defense in his answer and counterclaim in the underlying litigation. The trial court addressed the statute of limitations defense and found Kurt's siblings were not on notice of the agreements until 2010 and their claims were not barred by the statute of limitations. This court affirmed the trial court's finding in the underlying litigation. See *Hohenstein v. Hohenstein*, No. A-22-108, 2023 WL 5217713 (Neb. App. Aug. 15, 2023) (unpublished opinion).

The issue of Kurt's siblings giving false statements in regard to notice of the 1994 and 2002 Agreements was decided in the underlying litigation. As the trial court found,

> even if the Court assumes all of Kurt's allegations in his Complaint in [the present case] to be true and viewed in a light most favorable to him as the non-moving party, there is no relief that the Court can grant because [the issue of the appellees' misrepresentations] has been litigated in CI 13-226.

Therefore, the issue Kurt raises in the present case was previously litigated and decided in another action. The first element of issue preclusion is met.

The second element of issue preclusion requires that the prior action resulted in a final judgment on the merits. The decision by the trial court in the underlying litigation meets this requirement. A judgment is on the merits if the judgment is based upon legal rights, as distinguished from mere matters of practice, procedure, jurisdiction, or form. *Jordan v. Jordan*, 26 Neb. App. 280, 918 N.W.2d 20 (2018). The underlying litigation involved agreements between Kurt and his mother, Lillian, involving family trusts. After finding the statute of limitations did not bar Kurt's siblings' claims, the court found that Kurt breached his fiduciary duties in multiple ways, engaged in a pattern of self-dealing with respect to Cottonwood Flats, and exerted undue influence over his mother. The court awarded judgment in favor of the plaintiffs. The January 2, 2022, order is a final order as defined by Neb. Rev. Stat. 25-1902 (Reissue 2016).

Accordingly, we conclude the underlying litigation resulted in a final judgment on the merits.

The third element of issue preclusion is that the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action. Kurt, the party against whom

the rule is to be applied, was a party in the underlying litigation. The third element of issue preclusion has been met.

The fourth and final element of issue preclusion requires that there was an opportunity to fully and fairly litigate the issue in the prior action. Again, the truthfulness of Kurt's siblings in regard to when they had notice of the 1994 and 2002 Agreements, as well as his other general allegations of collusion and fraud by his siblings, were issues in the underlying litigation. Kurt raised the statute of limitations defense and the court addressed it. The court apparently believed Kurt's siblings as to when they had notice of the agreements and found that their claims were not barred by the statute of limitations. We conclude that there was an opportunity to fully and fairly litigate the issue in the underlying litigation, and the fourth element is met.

Because the issues Kurt now raises have already been decided against him, he is precluded from raising the issue in the present case. The trial court did not err in finding that issue preclusion barred Kurt from relitigating the core issue of whether his siblings were untruthful as to when they had notice of Kurt's 1994 and 2002 Agreements and whether the statute of limitations applied. This issue was conclusively decided in the underlying litigation. Accordingly, the court did not err in granting the appellees' motions to dismiss and dismissing Kurt's complaint for failure to state a cause of action. Kurt's first assignment of error fails.

MOTION FOR RECUSAL

Kurt next assigns that the trial court erred by overruling his motion for recusal of Judge Meismer. He argues that Judge Meismer should have recused himself "once it was made clear that the judge had personal knowledge of certain material facts relevant [to] the claims of [Kurt] and was advised that he would likely be a witness in the case." Brief for appellant at 39.

A motion requesting a judge to recuse himself or herself is initially addressed to the discretion of the judge to whom the motion is directed. *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004). An order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *Id.*

Kurt does not allege any bias or prejudice by Judge Meismer, nor does the record establish any bias or prejudice. Rather, Kurt claims that "the nature of information that Judge Meismer uniquely possessed . . . would require that he be a witness in the case." Brief for appellant at 39-40. Kurt seems to claim that Judge Meismer would testify that Kurt's siblings in the underlying litigation made false statements and that he unknowingly relied on those falsehoods in issuing rulings. However, Judge Meismer was not the judge who presided at trial in the underlying litigation. Kurt's allegations of fraud and false statements are based on alleged statements and actions that occurred in pleadings, testimony at trial, or in the proposed order submitted to the court. As Judge Meismer was not assigned to the underlying litigation during those timeframes, he would not have any personal knowledge of those matters and there would be no need for him to serve as a witness.

In addition, Kurt previously asserted his arguments about fraud and false statements to Judge Meismer in the underlying litigation, pursuant to Kurt's amended motion to vacate. Judge Meismer rejected the arguments then and denied the motion to vacate.

We conclude that the trial court did not abuse its discretion in overruling Kurt's motion for recusal. This assignment of error fails.

SANCTIONS

Kurt assigns that the trial court erred in ordering him to pay sanctions to counsel only which demonstrated a bias in favor of them. He also argues that by not awarding sanctions in favor of the non-lawyer appellees, it must be presumed that the court found that the allegations in the complaint were not frivolous or brought in bad faith. He contends this demonstrates that the court believed legal counsel should be treated differently, by imposing higher standards requiring more scrutiny and protection, than it provides to the average litigant.

The appellees requested sanctions on the ground that this action was frivolous and/or brought in bad faith. Frivolous, for the purposes of § 25-824, is defined as a legal position wholly without merit, meaning it is without rational argument based on law and evidence to support a litigant's position in the lawsuit. *Korth v. Luther*, 304 Neb. 450, 935 N.W.2d 220 (2019). It connotes an improper motive or legal position so wholly without merit as to be ridiculous. *Id.* An action is frivolous or in bad faith if a party attempts to relitigate the same issue previously resolved in an action involving the same party. *Lincoln Lumber Co. v. Fowler*, 248 Neb. 221, 533 N.W.2d 898 (1995). Any doubt whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question. *Korth v. Luther, supra.*

Kurt's only argument against the trial court's award of sanctions is that the amounts were only to be paid in favor of the counsel. However, the court explained why it ordered Kurt to pay sanctions only to counsel. It stated:

> [It] can appreciate that a losing party to litigation might feel that their loss was tainted by a dishonest opponent and that the trier of fact did not or would not recognize the dishonesty. The Court would give wide latitude to a litigant trying all possible means to be heard by the Court, and the Court does not take the grant of sanctions lightly.

The court further stated, however, that it could not tolerate a party dragging legal counsel into litigation as a named party without cause. We also note that Kurt is not a typical pro se party in that he was a practicing Nebraska lawyer until he was disbarred by the Supreme Court in 1993 (see *State ex rel. NSBA v. Hohenstein*, 243 Neb. 382, 500 N.W.2d 191 (1993)). As a result, he should have known better.

A trial court's decision regarding sanctions for frivolous or bad faith conduct must be upheld on appeal in the absence of an abuse of discretion by the trial court. *Lincoln Lumber Co. v. Fowler, supra*. We conclude that based on the facts in this case, the trial court did not abuse its discretion in its award of sanctions. This assignment of error fails.

CONCLUSION

Based on the reasons above, we conclude that the trial court did not err in finding that Kurt's causes of action were barred by issue preclusion and granting the appellees' motions to dismiss. Accordingly, the order of the trial court is affirmed.

AFFIRMED.

WELCH, Judge, concurring.

I concur with the opinion of the majority. I write separately because the majority opinion relies upon the doctrine of issue preclusion as the basis for affirming the district court's granting

of the appellees' motion to dismiss. The doctrine of issue preclusion was applied in relation to the final order in the underlying litigation. Although I dissented to the final order in the underlying litigation, the matter was resolved by the majority of that panel. Because the majority controls the result of the case in the underlying litigation, I agree that the doctrine of issue preclusion precludes relitigating the issues here for the reasons cited by the majority in this opinion.